Rosemary ATENCIO, Plaintiff,

v.

CITY OF ALBUQUERQUE and Bobbie A. Jones, in his individual capacity, Defendants.

No. Civ. 92–927 MV/LFG.

United States District Court, D. New Mexico.

March 2, 1995.

Kent Winchester, William J. Tryon, Vernon W. Salvador, Albuquerque, New Mexico, for plaintiff.

Judy K. Kelley, Karen C. Kennedy, Asenath M. Kepler, James R. Toulouse, Albuquerque, New Mexico, for defendants.

## MEMORANDUM OPINION AND ORDER

VAZQUEZ, District Judge.

THIS MATTER is before the Court on Defendant Bobbie Jones' Motion for a New Trial or in the Alternative for a Remittitur, filed February 2, 1994. The Court, having reviewed Defendant's Motion and Memorandum in support thereof, Plaintiff's Response, filed February 28, 1994, and Defendant's Reply, filed March 18, 1994, and being fully apprised of the pertinent law, finds that Defendant's Motion is, in part, well-taken and will be granted in part.

This case came on for a jury trial on January 3, 1994, on Plaintiff's § 1983 claim against Defendant Bobbie Jones that he violated her constitutional right to Equal Protection of the law by sexually harassing her at the workplace. On January 7, 1994, the jury returned a verdict in favor of Plaintiff and awarded actual damages in the amount of $25,000 and punitive damages in the amount of $3,000,000.

In this motion, Defendant argues that the Court should grant a new trial or in the

alternative a remittitur because the jury rendered an excessive verdict borne of passion and prejudice which was against the weight of the competent evidence. Defendant attributes the excessiveness of the punitive damages award to the following: (1) the Court erroneously admitted into evidence certain highly prejudicial, inadmissible statements made by Ms. Atencio about Mr. Jones; (2) the testimony of Ms. Connie Derr was irrelevant to the jury trial issues and should have been stricken as there was no "retaliation" issue for the jury; (3) the testimony of Ms. Vigil and Ms. Trujillo contained inadmissible and prejudicial hearsay; (4) the Court erroneously excluded a key corroborative defense witness from testifying on defendant's behalf. Defendant also argues that Defendant's due process rights were violated because the jury instructions pertaining to punitive damages were vague and confusing and failed to adequately guide the jury's discretion.

## STANDARD OF REVIEW

 Rule 59(a) of the Federal Rules of Civil Procedure permits the trial court to grant a new trial "to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Whether to grant a new trial is a decision committed to the sound discretion of the district court. *Ryder v. City of Topeka*, 814 F.2d 1412, 1424 (10th Cir.1987). In reviewing a motion for new trial, the district court should "exercise judgment in preference to the automatic reversal for 'error' and ignore errors that do not affect the essential fairness of the trial." *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 553, 104 S.Ct. 845, 848, 78 L.Ed.2d 663 (1984). A new trial may be granted if prejudicial error has occurred or if the verdict is against the weight of the evidence, *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 637 (10th Cir.1988) or if damages are excessive. *See Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940). In considering a motion for a new trial on the grounds of prejudicial error, the

alleged trial court errors must be clearly erroneous, as well as prejudicial and must have affected the substantial rights of the parties. *Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp.*, 571 F.2d 1144, 1148–49 (10th Cir.1978), *cert. denied*, 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978); Fed. R.Civ.P. 61. The burden of demonstrating that substantial rights were affected rests with the party asserting error. *K–B Trucking Co. v. Riss International Corp.*, 763 F.2d 1148 (10th Cir.1985). The district court's grant or denial of a motion for new trial made on the ground that the verdict is against the weight of the evidence is affirmable on appeal absent an "unusual situation" or a "gross abuse of discretion." *Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1456 (10th Cir.1987), *citing Harris v. Quinones*, 507 F.2d 533, 535 (10th Cir.1974). "A motion for new trial on the grounds that the jury verdict is against the weight of the evidence normally involves a review of the facts presented at trial, and thus involves the discretion of the court." *Black v. Hieb's Enter., Inc.*, 805 F.2d 360, 363 (10th Cir.1986). The trial court must focus on whether the verdict is clearly, decidedly, or overwhelmingly against the weight of the evidence. *Id.* In deciding whether to grant a new trial on the basis that punitive damages are excessive, the trial court must determine that the damages are so excessive that they shock the judicial conscience and give rise to the inference of passion or prejudice on the part of the jury. *See Malandris v. Merrill Lynch*, 703 F.2d 1152, 1168 (10th Cir.1981); *Mason v. Texaco*, 948 F.2d 1546, 1560 (10th Cir.1991). It is well settled that mere excessiveness in the amount of the award may be cured by a remittitur, whereas excessiveness which results from jury passion or prejudice may not be so cured. *Malandris*, 703 F.2d at 1168; *O'Gilvie v. International Playtex, Inc.*, 821 F.2d 1438, 1447 (10th Cir.1987); *Karns v. Emerson Co.*, 817 F.2d 1452, 1460 (10th Cir. 1987); Fed.R.Civ.P. 59; 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2820 (1973); J. Moore, 6A Moore's Federal Practice, para. 59.08(7) (1991). If the court determines that excessiveness in the amount of

the award gives rise to the inescapable inference that it resulted from passion or prejudice on the part of the jury, the court must grant a new trial, since the prejudice may have infected the jury's liability determination as well. *See Malandris,* 703 F.2d at 1152; 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2820 (1973).

## ANALYSIS

In light of the aforementioned standards, the Court will examine each of Defendant's arguments in turn.

## I. The prejudicial impact of Ms. Atencio's statements concerning Bobbie Jones.

 Defendant argues that a certain portion of Ms. Atencio's testimony at trial was so prejudicial that it caused the jury to deliver a verdict borne of passion and prejudice. At trial Ms. Atencio testified that Mr. Jones "manipulated people," was "cruel," "threatening," "mean," that "everybody was afraid of [him]," and that "he just practically wanted to kill everybody at Work Unlimited." She described Mr. Jones as "the king" and stated that he "banged on things" and "used bad words." She also testified that on one occasion Mr. Jones threatened he was going to kill Fred Leyba [a coworker]. Tr. Jan. 4, 1994, p. 79–82.

After this testimony was elicited, the Court sua sponte requested that counsel prepare a limiting instruction to reduce the prejudice of these statements and to explain the limited purpose for which they could be used. The limiting instruction read as follows:

> Ladies and gentlemen, this morning Ms. Atencio testified as to her belief that Bobbie Jones could affect her ability to keep her job. She said that this belief was based upon incidents that she had either seen or heard about involving Mr. Jones and other people at work. You are instructed that her testimony is relevant only and can be considered only for the purpose as to why she held that belief and not to prove that the incidents that she referred to actually occurred.

Defendant did not at any time object to the testimony on the specific basis of Rule 404(b) or Rule 403, move to strike the testimony, or move for a mistrial. Instead, the Defendant objected once on the basis of "relevance and leading," Tr. Jan. 4, 1994, p. 81, and at another time on the basis that Plaintiff's answer constituted a narrative. *Id.* at 82. Because of Defendant's failure to object on the specific basis of Rule 404(b) or Rule 403, or to move for a mistrial or to strike the testimony, the Court will not grant a new trial unless there is "plain error." Rule 103(d). Plain error exists in a civil case where the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Glenn v. Cessna Aircraft Co.,* 32 F.3d 1462 (10th Cir.1994). In this case, the testimony did not violate Rule 404(b) because it was not introduced to prove that the defendant acted "in conformity therewith," Fed.R.Evid. 404(b), but rather to explain why Ms. Atencio believed that Mr. Jones could affect her ability to keep her job. Furthermore, pursuant to Rule 403, although it cannot be denied that Ms. Atencio's testimony was highly prejudicial, it was nonetheless highly relevant to prove a critical fact in the case, namely, that Plaintiff felt coerced into having sex with Mr. Jones because in the past he had protected Plaintiff's job, which was in jeopardy because she had taken substantial leave from work due to severe migraine headaches, and Mr. Jones led Plaintiff to believe that he would continue to protect her job if she engaged in sexual intercourse with him. Thus, the probative value of Ms. Atencio's testimony was probably not "substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. Moreover, the prejudicial impact of the testimony was reduced by the Court's limiting instruction. With respect to Defendant's assertion that "the jury did not heed the Court's limiting instruction," Defendant's Mem. in Support of Motion for New Trial, filed February 2, 1994, at 7, the Court can give no credence to this argument. It is well established that courts must presume that jurors will conscientiously follow the court's instructions. *See Ellis v. Oklahoma,* 430 F.2d 1352, 1356 (10th Cir.1970) ( [w]e presume jurors will remain true to their oath and conscientiously follow

the trial court's instructions); *United States v. Carter,* 973 F.2d 1509, 1514 (10th Cir.1992) ([t]his court will not speculate whether jurors refuse[ ] to abide by the trial court's instructions or whether jurors are illiterate or incapable of following instructions). Defendant's contention supported by nothing more than mere speculation and conjecture is insufficient to rebut the presumption that jurors will follow a court's instructions.

In light of these circumstances and in light of the well established rule that exclusion of relevant evidence under Rule 403 is an extraordinary remedy to be used sparingly, *K–B Trucking Co. v. Riss Intern. Corp.,* 763 F.2d 1148 (10th Cir.1985), introduction of the evidence may not have been improper. However, even if admission of the testimony was error, such error did not "seriously affect the fairness, integrity or public reputation of judicial proceedings," and the Court will not grant a new trial on this basis.

## II. Admissibility of Ms. Derr's testimony.

Defendant argues that the failure of the Court to strike the testimony of Ms. Derr was prejudicial error. He contends that not only was the testimony irrelevant but that it was also misleading to the extent that the jury may have become confused as to whom it was punishing—Mr. Jones or the City of Albuquerque. The Court finds that although some of Ms. Derr's testimony was irrelevant to the jury issues and should have been stricken, there was no plain or fundamental error and, thus, Defendant is not entitled to a new trial on this ground.

Ms. Derr was a Union Representative for the American Federation of State and County Municipal Employees at the time Ms. Atencio reported Mr. Jones for sexually harassing her. Tr. Jan. 3, 1994, p. 67. Ms. Atencio reported Mr. Jones during a meeting with Ms. Derr on August 1, 1991. Tr. Jan. 3, 1994, p. 70. Ms. Derr testified that in response to Ms. Atencio's allegations—allegations that Bobbie Jones had coerced and intimidated her—she directed Ms. Atencio not to meet with Mr. Bobbie Jones by herself. Tr. Jan. 4, 1994, p. 72. Ms. Derr testified that the following morning, which was a Friday, she went to Work Unlimited

and spoke with Ms. Atencio's direct supervisor, Mr. Gary Crosley and told him that she did not want Ms. Atencio meeting with Mr. Jones by herself. She also testified that she spoke with Bobbie Jones and told him that if he wanted to meet with Ms. Atencio he would have to bring in Ms. Atencio's immediate supervisor or page her (Ms. Derr).

Ms. Derr further testified that the following Monday she went to Employee Relations to report the problem at Work Unlimited and was referred to Ann Yegge, the department director for Human Services, under which Work Unlimited fell. At this point in Ms. Derr's testimony, Defendant objected to any further testimony on this subject on the basis of relevance. The Court asked for confirmation from Plaintiff's counsel if the testimony was going to the issue of retaliation and Plaintiff's counsel responded that it was and that he was going to introduce evidence indicating that Mr. Jones was involved in "engineering" the action taken against Ms. Atencio. Tr. Jan. 3, 1994, p. 86.

Ms. Derr's subsequent testimony related solely to the process that was taken by the City of Albuquerque in order to transfer Ms. Atencio out of Work Unlimited—a transfer that both Ms. Atencio and Ms. Derr were requesting. Tr. Jan. 3, 1994, p. 91. At the conclusion of Ms. Derr's testimony, Defendant again moved to strike all of Ms. Derr's testimony after the time that Ms. Derr met with Bobbie Jones at Work Unlimited. Tr. Jan. 3, 1994, p. 103. The Court denied the motion and explained that it was relevant if Plaintiff could tie it in to the retaliation claim against Bobbie Jones through subsequent witnesses. Tr. Jan. 3, 1994, p, 103.

Later the same day, Ms. Derr testified at the non-jury Title VII portion of the trial in which the City of Albuquerque was a defendant. At the conclusion of her testimony, the Court attempted to clarify for the record the basis for Ms. Derr's earlier testimony on the § 1983 claim. Plaintiff explained that the retaliation claim related solely to the Title VII claim and not to the § 1983 claim. With respect to the § 1983 claim, Plaintiff never attempted to make the link between Mr. Jones' "engineering" and the process by

which Plaintiff was transferred from Work Unlimited and the jury was never asked to determine whether Mr. Jones retaliated against Ms. Atencio in violation of her First Amendment rights. Noticeably, when it became apparent that retaliation was no longer an issue for the jury, Defendant did not subsequently move to strike the latter portion of Ms. Derr's testimony as irrelevant. It was only at this juncture that Ms. Derr's testimony concerning the procedural steps taken to transfer Ms. Atencio from Work Unlimited became inadmissible and at this point Defendant should have moved to strike the testimony. Had Defendant moved to strike Ms. Derr's testimony at that time, the Court could have corrected the error upon which Defendant now, in part, predicates his motion for a new trial. As a result of Defendant's failure to contemporaneously or timely object, the Court must review the admissibility of Ms. Derr's testimony concerning non-jury trial issues for plain error. *See McEwen v. City of Norman*, 926 F.2d 1539, 1544 (10th Cir.1991) (rejecting position that where an objection is made known to the court in a motion in limine and the judge's denial is "explicit and definitive," no further continuing objection is necessary). In civil cases, plain error exists where the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Glenn v. Cessna Aircraft Co.*, 32 F.3d 1462 (10th Cir. 1994). In light of all the evidence presented at this trial, the Court cannot conclude that the error in failing to strike Ms. Derr's testimony "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.* Ms. Derr's testimony about actions taken by the City of Albuquerque to transfer Ms. Atencio was not relevant to the jury's determination of liability. However, the jury was carefully instructed on each of the elements that it needed to find in order to determine whether the Defendant was liable for sexually harassing Ms. Atencio. The jury was further instructed that only after it had determined liability could it assess damages against Mr. Jones. In light of the instructions, it is inconceivable that the jury

would have considered the process used by the City of Albuquerque to transfer Plaintiff from Work Unlimited to determine whether the Defendant had sexually harassed plaintiff. Thus, the Court concludes that the inadmissible testimony could not seriously have affected the jury's determination of liability.

With respect to damages, the testimony of Ms. Derr, in retrospect, may have been marginally relevant. To this extent, the Court's failure to strike Ms. Derr's testimony may not have been error at all. However, even if it were error, the testimony was not so confusing, prejudicial or inflammatory that it seriously affected the fairness of the trial such as to cause the jury to return a verdict borne of passion or prejudice.

Defendant also argues that any testimony of Ms. Derr's relating to inadmissible hearsay statements made by Ms. Atencio was prejudicial error. Defendant did not move to strike the hearsay statements when they were elicited at trial. Therefore, the Court must again determine whether any "plain error" occurred. Because Ms. Atencio, the declarant, was present throughout the trial and, indeed, testified at length and was subject to cross-examination, the jury had every opportunity to evaluate the credibility of Ms. Atencio and to determine whether she was telling the truth when she told Ms. Derr that Bobbie Jones had "coerced and intimidated" her. Under these circumstances, I find that there was no plain error.[1]

### III. Admissibility of statements made by Plaintiff to Ms. Vigil and Ms. Trujillo.

Defendant contends that the Court committed prejudicial error in admitting the testimony of two witnesses, Ms. Vigil and Ms. Trujillo, concerning statements made by the Plaintiff to them. Although a review of the record reveals that the Court erred in admitting the statements, after examining the record, the Court concludes that the error was harmless.

---

1. The Court notes that even if it were to apply the somewhat less stringent "harmless error" standard to the challenged testimony of Ms.

Derr, the Court would find that the error was harmless because it did not "affect the substantial rights" of the Defendant.

## A. Admissibility of Plaintiff's statements to Ms. Vigil pursuant to Fed.R.Evid. 803(3) as statements of then existing mental or emotional condition.

■■ Ms. Vigil testified that during a telephone conversation with Ms. Atencio, Ms. Atencio made certain statements about Mr. Bobbie Jones. Tr. Jan. 3, 1994, pp. 156–157. While crying and upset, Ms. Atencio told Ms. Vigil that approximately two or three days earlier Mr. Jones had grabbed her and kissed her on the lips while they were in her car in the parking lot of the Holiday Inn Pyramid. Tr. Jan. 3, 1994, pp. 158–159. Prior to admission of this testimony, Defendant objected on the basis of inadmissible hearsay. Plaintiff offered the testimony pursuant to Rule 803(3), and the Court accordingly admitted the testimony. Tr. Jan. 4, 1994, p. 158. Thus, the Court admitted the statements made by Ms. Atencio to Ms. Vigil as statements pertaining to the Plaintiff's then existing mental or emotional condition. Fed. R.Evid. 803(3) provides in pertinent part as follows:

> Rule 803. The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

■■ The rationale underlying Rule 803(3) is that such statements will be trustworthy because their contemporaneous nature provides some assurance against fabrication. *See* Jack B. Weinstein, Weinstein's Evidence, para. 803–114 (1994). Rule 803(3) admits over hearsay objection statements by the declarant as to her *"then existing* state of mind." By "then existing," the rule means, existing at the time the declarant made the statement. Statements concerning what the declarant thought or felt at some time in the past are not statements of "then existing"

state of mind. Nor does this exception permit the witness to relate any of the declarant's statements as to why [s]he held the particular state of mind, or what [s]he might have believed that would have induced the state of mind. *United States v. Joe*, 8 F.3d 1488, 1492 (10th Cir.1993).

Clearly, any statement that Plaintiff made concerning how upset she may have been at the time of the telephone conversation was admissible under this exception. However, any statements concerning the source of her distress, i.e., what happened at the Pyramid parking lot do not fall within the scope of this exception. Such statements are completely devoid of the contemporaneousness which guarantees the trustworthiness of statements under this exception.

## B. Admissibility of Plaintiff's statements to Ms. Trujillo as excited utterances.

■■ Ms. Trujillo testified about a telephone conversation she had with Ms. Atencio. During that conversation, Ms. Atencio, who was crying and hysterical, told Ms. Trujillo that Ms. Trujillo would never be her friend again because she had been to bed with Bobbie Jones. Tr. Jan. 3, 1994, pp. 172, 176. She further testified that Ms. Atencio stated that Bobbie Jones had promised that he would leave her alone and would not bother her anymore. Tr. Jan. 3, 1994, p. 176. This conversation took place almost three days after Ms. Atencio had allegedly engaged in sexual intercourse with Bobbie Jones at the Plaza Inn Hotel. (The sexual intercourse allegedly took place on April 18, 1991, and the conversation took place on April 21, 1991. Tr. Jan. 3, 1994, p. 172). Prior to admission, Defendant objected to this testimony as inadmissible hearsay. Plaintiff offered the testimony pursuant to Rule 803(3), as a statement of then existing mental or emotional condition. The Court did not admit the statement pursuant to this exception but rather as an excited utterance under Rule 803(2). Tr. Jan. 3, 1994, p. 175.

In order to constitute an excited utterance the declarant's statement must be "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or

condition." Fed.R.Evid. 803(2). The assumption underlying this exception is that a person under the sway of excitement precipitated by an external startling event will not have the reflective capacity essential for fabrication and that consequently, any utterance will be spontaneous and trustworthy. Jack B. Weinstein, Weinstein's Evidence, para. 803–101 (1994). In determining whether the statement is made while the declarant was under the stress of excitement caused by the event or condition, "the standard of measurement is the duration of the state of excitement," so long as the "condition of excitement ... temporarily stills the capacity of reflection and produces utterances free of conscious fabrication." Advisory Committee's Notes to Supreme Court version of Federal Rules of Evidence, 28 USCS Appx. Fed.R.Evid., Appendix 6, Rule 803(2).

■ Thus, although the lack of **capacity** to fabricate rather than the lack of **time** to fabricate is the justification for this rule and the period of acceptable time will frequently be longer than in cases arising under the present sense impression exception, the length of time will, nonetheless, be relevant in determining whether the statement was spontaneous or impulsive rather than the product of conscious reflection, i.e., whether the declarant had an opportunity to reflect upon the statement. Recognizing that each case must be decided on its own facts, the Court nonetheless finds that, in this case, the lapse of almost three days between the event and the declarant's statement indicates that the statements were not the product of spontaneity and impulsiveness but rather the product of conscious reflection. As such, the statements lacked the guarantees of trustworthiness underlying the excited utterance exception to the hearsay rule. Although Plaintiff was undoubtedly upset at the time she made the statements to Ms. Trujillo, the passage of almost three days between the "startling event" and the statement afforded Plaintiff an opportunity to gather her thoughts, reflect upon the incident, and to make the conscious decision to call up her friend and tell her about the incident. The very fact that Ms. Atencio told Ms. Trujillo that she feared Ms. Trujillo would never be her friend again indicates that Ms. Atencio

had, indeed, reflected upon both the incident and the statements that she made to Ms. Trujillo. Under these circumstances, the statements lacked the requisite indicia of spontaneity and incapacity to fabricate that guarantees the trustworthiness of statements under the excited utterance exception.

## C. Admission of the statements was harmless error.

Having determined that the Court erred in admitting the statements made by Ms. Atencio to Ms. Trujillo and Ms. Vigil, the Court must now decide whether the error was harmless, that is, whether a substantial right of Defendant's was affected by the Court's error. Fed.R.Evid. 103.

In this case, any error the Court made in admitting the statements was minimized for several reasons. First and most importantly, Defendant had every opportunity to cross-examine the declarant, Ms. Atencio. The declarant was present throughout the entire trial and testified at considerable length, the jury had ample opportunity to assess the declarant's credibility and the defendant had ample opportunity to cross-examine her. In this way, any unreliability or lack of trustworthiness surrounding the making of the challenged statements could be carefully probed and exposed to the jury.

■ Second, the statement made by Ms. Atencio to Ms. Vigil about going to bed with Mr. Jones, although not satisfying the underlying rationale of the excited utterance exception, had an independent source of trustworthiness, that is, the statement is very closely akin to a "statement against interest" which falls within Fed.R.Evid. 804(3). A married woman admitting to having sexual intercourse with another man is a statement which is so against her interest that it contains certain guarantees of trustworthiness. What would she have to gain by admitting to her friends that she had committed adultery with Mr. Jones? Making such a statement could subject her to humiliation and embarrassment. Although this statement may not technically fall within the scope of Rule 804(3), i.e., it is not so far against the Plaintiff's penal or pecuniary interest so as to

subject her to civil or criminal liability, its trustworthiness, nonetheless, stems from the same underlying rationale of that exception.

■ Third, the statements were cumulative of Ms. Atencio's own testimony concerning the incidents. Ms. Atencio testified in great detail about the two separate incidents at the Pyramid and at the Plaza Inn Hotel. During Ms. Atencio's testimony and throughout the entire trial, the jury was free to evaluate the credibility of Ms. Atencio and determine whether she had told Ms. Vigil and Ms. Trujillo the truth about the incidents. Further, with respect to Ms. Atencio's statements to Ms. Trujillo that she had gone to bed with Mr. Jones, there was independent evidence corroborating the fact that the plaintiff had, indeed, engaged in sexual intercourse with the defendant—a fact which the defendant denied outright. The most devastating evidence corroborating Ms. Atencio's allegation was a receipt signed by Mr. Jones for a room at the Plaza Inn Hotel on the date when the sexual intercourse allegedly took place.

For the aforementioned reasons and particularly in light of Defendant's opportunity to cross-examine the declarant, Ms. Atencio, the Court concludes that admission of the challenged statements did not affect a substantial right of Defendant's and was, therefore, harmless error.

### IV. Exclusion of Ms. April Rey.

■ Defendant argues that exclusion of Ms. April Rey, a critical defense witness, constituted prejudicial error. Defendant intended to call as his first witness Ms. April Rey. Ms. Rey would have testified that she spent several hours with Mr. Jones' son in Room 222 at the Plaza Inn Hotel on April 18, 1991. In this respect, Ms. Rey's testimony was critical to the defense because it was the only evidence that would have corroborated—at least to some extent—Mr. Jones' story that he had rented the room for his son on that evening. However, Ms. Rey's name did not appear on a witness list until Thursday, December 30, 1993, just two working days before the beginning of trial. This was in violation of the Pretrial Order, filed September 22, 1993, which required that all wit-

nesses other than those named in the Pretrial Order be identified to opposing counsel together with their addresses and a statement of the general subject matter of their testimony, no more than twenty days after completion of discovery (which took place August 15, 1993). Moreover, at the time Ms. Rey's name appeared on the witness list, Defendant did not explain who she was or provide the substance of her testimony. Tr. Jan. 5, 1994, p. 53. Given the very late production of her name as a witness, Defendant should have provided this information to opposing counsel and should have offered to make Ms. Rey available for a deposition.

Plaintiff objected to Ms. Rey's testimony on the basis that it violated the Pretrial Order and that such testimony would be highly prejudicial to the Plaintiff in light of her inability to effectively cross-examine such a critical defense witness, without the benefit of investigation. Tr. Jan. 5, 1994, p. 57. The Court deferred ruling on the issue at that juncture, but requested that Plaintiff speak with Ms. Rey over the lunch hour and depose her if necessary. After the lunch break, Plaintiff's counsel reported that he had spoken with Ms. Rey and that it was impossible for him to effectively impeach her testimony without an opportunity to do an investigation to disprove her story. Tr. Jan. 5, 1994, pp. 112–113.

■ The Court ruled that Ms. Rey's testimony would be excluded. Tr. Jan. 5, 1994, p. 130. The exclusion of a witness' testimony on the basis of a violation of a pretrial order will be reviewed only for an abuse of discretion. *See James v. Newspaper Agency Corp.*, 591 F.2d 579, 582 (10th Cir.1979) ([w]hen there exists a properly drawn, detailed pre-trial order, a trial court's determination that certain facts or issues must be excluded from trial on the basis of a pre-trial order may be reversed only if there is an abuse of discretion). The trial court may modify the pre-trial order during trial to prevent manifest injustice. *Rock Island Improvement Co. v. Helmerich & Payne, Inc.*, 698 F.2d 1075, 1081 (10th Cir.1983), *cert. denied*, 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1302 (1983). Thus, this Court abused its discretion only if the exclusion of

Ms. Rey's testimony resulted in manifest injustice. In determining whether manifest injustice resulted the Court should consider four factors: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in court; and (4) bad faith or willfulness in failing to comply with the court's order. *Smith v. Ford Motor Company,* 626 F.2d 784, 797 (10th Cir.1980).

■ In this case, the disclosure of Ms. Rey's name as a witness was so untimely that it was impossible for Plaintiff to conduct an investigation to enable her to effectively impeach Ms. Rey's testimony. As a result, had Ms. Rey testified, the actual prejudice to the Plaintiff would have been great. Although Defendant himself was undoubtedly prejudiced by the exclusion of Ms. Rey's testimony, such prejudice was caused by his own calculated failure to timely disclose a critical witness to opposing counsel. Furthermore, continuation of the trial in order to permit investigation would have significantly disrupted the orderly and efficient trial of the case. The Court, having weighed the potential prejudice to the Plaintiff had Ms. Rey testified at the trial, Plaintiff's inability to cure the prejudice, the potential disruption to the trial process, and the Defendant's conduct in causing the untimely disclosure, concludes that exclusion of Ms. Rey's testimony did not result in manifest injustice.[2] Thus, the Court did not abuse its discretion in excluding Ms. Rey's testimony and a new trial will not be granted on this basis.

### V. Aggregation of errors.

Having determined that none of the Court's errors, standing alone, was sufficient to warrant a new trial, the Court further concludes that the errors, taken in the aggregate, also do not require a new trial. The

aggregation of errors did not affect the substantial rights of Defendant nor did they seriously affect the fairness of the trial. Defendant's speculative contention that the errors caused the jury to return a verdict borne of passion and prejudice does not withstand scrutiny in light of the harmless nature of the errors.

■ Furthermore, the Court has reviewed the entire record and concludes that sufficient competent evidence supported the jury's determination that Defendant acted with the requisite scienter to justify imposition of punitive damages, that is, there was sufficient competent evidence from which a jury could conclude that Defendant acted with evil motive or intent or that he acted with reckless or callous indifference to the federally protected rights of Plaintiff. *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983); *see e.g.,* facts enumerated in this Court's Memorandum, Opinion and Order, filed February, 1995, pp. 4–6. In this regard, the jury's decision to impose punitive damages was not "clearly, decidedly or overwhelmingly against the weight of the evidence," *Black v. Hieb's Enter., Inc.,* 805 F.2d 360, 363 (10th Cir.1986), and the Court will not grant a new trial on this basis.

### VI. Whether the punitive damages jury instruction coupled with Plaintiff's counsel's highly misleading statements during closing argument on the issue of punitive damages constituted "plain error."

Defendant argues that the Court's jury instructions were vague and confusing on the issue of punitive damages and as a result the jury, unguided by appropriate instructions in the awarding of such damages, "galloped wildly away from sound legal principles." Defendant's Mem. in Support of Motion for New Trial at 12. Having reviewed the Court's instructions and the relevant case

---

2. The Court does not find that Defendant acted in "bad faith" or "wilful[ly]" in failing to list Ms. Rey as a witness in accordance with the Pretrial Order. However, this factor is not a prerequisite for excluding evidence. *See Eastridge Development Co. v. Halpert Associates, Inc.,* 853 F.2d 772, 779 (10th Cir.1988). The Court does, nonetheless, consider it significant that Defendant failed to take appropriate immediate action to alleviate the prejudice to Plaintiff as soon as he was apprised of the critical nature of Ms. Rey's testimony.

law, the Court concludes that the jury instructions on the issue of punitive damages, were indeed inadequate to sufficiently guide the jury, first in determining whether to award punitive damages, and if so, in determining an appropriate amount. This error was further compounded by certain highly misleading statements made by Plaintiff's counsel during closing arguments which were likely to cause the jury to believe that punitive damages were to be awarded against the **City of Albuquerque.**

■ In this case, Defendant did not object to the substance of the jury instructions, or to opposing counsel's misleading statements during closing argument. Thus, Defendant never gave the Court any notice at trial of the problems of which he now complains nor any opportunity to correct the perceived error. *See Taylor v. Denver and Rio Grande Western Railroad Co.,* 438 F.2d 351, 353 (10th Cir.1971) (the purpose of Rule 51 is to prevent a litigant from taking advantage of an error which could be rectified by the court if called to its attention by a timely and specific objection); Rule 51 ( [n]o party shall assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection). Because Defendant did not specifically object to the substance of the jury instructions or to the misleading statements of opposing counsel, the Court will grant a new trial only if "plain error" exists.

Plain error is confined to the exceptional case where the error has "seriously affected the fairness, integrity or public reputation of judicial proceedings." In this case, the Court has considered the following factors in determining whether "plain error" existed: (1) the inadequacy of the jury instructions; (2) the likelihood of prejudice resulting from Plaintiff's misleading statements during closing arguments; and (3) the serious harm suffered by the defendant and innocent third parties as a result of the error. *See Williams v. City of New York,* 508 F.2d 356 (2d Cir.1974).

## A. Adequacy of jury instructions on the issue of punitive damages.

In *Pacific Mutual Life Insurance Company v. Haslip, et al.,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the United States Supreme Court, in determining whether the Alabama punitive damages scheme violated due process, focused on three factors: (1) the jury instructions; (2) Alabama posttrial procedures for scrutinizing punitive awards; and (3) Alabama Supreme Court review of the punitive damages awards. The Court's discussion of the trial court's jury instructions is particularly instructive for purposes of evaluating the adequacy of this Court's instructions. The trial court's instructions provided as follows:

> Now, if you find that fraud was perpetrated, then in addition to compensatory damages, you may in your discretion ... award an amount of money known as punitive damages. This amount of money is awarded to the plaintiff, but it is not to compensate the plaintiff for any injury. It is to punish the defendant ... [and] for the added purpose of protecting the public by deterring the defendant and others from doing such wrong in the future. Imposition of punitive damages is entirely discretionary with the jury; that means you don't have to award it unless this jury feels that you should do so. Should you award punitive damages, in fixing the amount, you must take into consideration the character and degree of the wrong as shown by the evidence and necessity of preventing similar wrong.

The Court found that these jury instructions provided constitutionally adequate guidance to the jury in assessing the amount of punitive damages to award, that is, the jury's discretion in assessing punitive damages was sufficiently limited to comport with due process. The Court emphasized that the trial court expressly described for the jury the purpose of punitive damages, namely, "not to compensate the plaintiff for any injury but to punish the defendant and for the added purpose of protecting the public by deterring the defendant and others." The jury's discretion was confined to deterrence and retribution and if punitive damages were to be awarded,

the jury "must take into consideration the character and the degree of the wrong as shown by the evidence and necessity of preventing similar wrong." *Id.* at 19, 111 S.Ct. at 1044. In this way, the instructions enlightened the jury as to the nature and purpose of the punitive damages, identified them as punishment for civil wrongdoing of the kind involved, and explained that their imposition was not compulsory. *Id.* Thus, the jury instructions imposed a sufficiently definite and meaningful constraint on the discretion of the jurors to comport with due process.

■ By contrast to the *Haslip* instructions, this Court's Instructions Numbers 25 and 26 provided as follows:

> Punitive damages *are appropriate* in a Section 1983 case when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves a reckless or callous indifference to the rights or safety of others. Punitive damages may be awarded without a showing of actual ill will, spite or intent to injure. The standard of proof for punitive damages is preponderance of the evidence. The purpose of punitive damages is to punish a defendant for his outrageous conduct and to deter him and others like him from similar conduct in the future. (Emphasis added).

First and most critical is the absence of an instruction to the jury that they have discretion not to award punitive damages. Instead, it was instructed that punitive damages were "appropriate" if Defendant's conduct was motivated by evil motive or intent, or if it involved reckless or callous indifference to the rights of others. In *Haslip*, by contrast, the trial court went to great lengths to emphasize that the jury had discretion to award punitive damages and the U.S. Supreme Court found this fact significant.

In addition, unlike in *Haslip*, the Court did not instruct the jury that it must take into consideration the *character and degree of the wrong* as shown by the evidence and the *necessity* of preventing similar wrong. In essence, the jury was not instructed that its award must be *reasonably related to the circumstances* of the case and must be *necessary* to deter the defendant or others like him from engaging in similar conduct in the future.[3] This Court's instructions provided merely skeletal guidance on the issue of punitive damages. It failed to inform the jury that imposition of punitive damages was not compulsory and it explained merely what conduct the jury had to find in order to reach the threshold issue of punitive damages and that the purpose of punitive damages was to punish and to deter. Such instructions failed to provide a meaningful constraint on the jury's discretion, in violation of due process.

A close look at the deterrent and retributive purposes of punitive damages indicates that one crucial factor that a jury should consider in determining an appropriate amount of punitive damages is the defendant's financial capacity. *See Perrin v. Anderson,* 784 F.2d 1040, 1048 (10th Cir. 1986) ([t]he jury must know the impact an award will have on the defendant to properly assess punitive damages). This is because the defendant's financial capacity is highly relevant to the jury's determination of an amount that will be sufficient to deter the particular defendant and others like him from engaging in similar conduct and to punish the particular defendant for his wrongdoing. For example, if the defendant is a billion dollar corporation, a punitive damages award of $1,000,000 would be but a slap on the wrist and, as such, would be unlikely to act as any deterrence and would be devoid of

---

**3.** This Court's instructions contrast with instructions that were upheld by the Tenth Circuit in *Broadcort v. Summa Medical Corporation,* 972 F.2d 1183 (10th Cir.1992). In that case, the jury was instructed that: the award of punitive damages was discretionary; the purposes of punitive damages were to punish and deter others from commission of like offenses; the amount must be based on reason and justice taking into account all the circumstances, including the nature of the wrong and such aggravating and mitigating circumstances as may be shown; the amount must be reasonably related to the actual damages and injury and not disproportionate to the circumstances. The Tenth Circuit found that these instructions contained adequate safeguards and standards by which the jury could properly consider whether to award punitive damages and if so, in what amount.

any meaningful retributive value. *Cf. Continental Trend Resources, Inc. v. Oxy USA, Inc.*, 44 F.3d 1465, 1479 (10th Cir.1995) (from the perspective of what is necessary to punish a very wealthy corporation, and to deter it and others similarly situated from like behavior, punitive damages award of $30,-000,000 was proper). On the other hand, a $1,000,000 award against an average private individual would mean financial devastation and clearly would be substantially more than is necessary to deter or punish such an individual. *See Albritton v. Gandy*, 531 So.2d 381 (Fla. App. 1 Dist.1988) (punitive damages should be painful enough to provide some retribution and deterrence, but should not be allowed to destroy the defendant); *Wynn Oil Co. v. Purolator Chemical Corp.*, 403 F.Supp. 226 (M.D.Florida) (1974) (the award of punitive damages should only hurt, not bankrupt, a defendant; the amount awarded should substantially punish the defendant but not place it beyond a reasonable potential financial capacity to pay the award). Although, perhaps not a constitutional prerequisite, trial courts should require that the jury, in determining an appropriate amount of punitive damages, consider the defendant's financial capacity. *See* 3 Devitt and Blackmar, *Federal Jury Practice and Instructions* § 104.07 at 146 (Supp.1993).[4] Such a guideline assures that the retributive and deterrent purposes of punitive damages will be meaningfully served with respect to the particular defendant and others similarly situated. An award beyond the defendant's financial capacity exceeds what is necessary to punish him and to reasonably assure that the

defendant will be deterred from engaging in similar conduct in the future.

A review of the case law indicates the importance of the relationship between the amount of punitive damages and the ability of the defendant to pay the award. *See e.g., Eichenseer v. Reserve Life Ins. Co.*, 934 F.2d 1377 (5th Cir.1991) (upholding award of $500,000 where defendant had net worth of $157,000,000); *Spaeth v. Union Oil Co.*, 762 F.2d 865 (10th Cir.1985) (upholding award of $2,000,000 where defendant had net worth of 3⅓ billion); *Harrell v. Old American Ins. Co.*, 829 P.2d 75 (Okla.App.1991) (upholding award of $250,000 where defendant had net assets of $32,420,182); *Capstick v. Allstate Ins. Co.*, 998 F.2d 810 (10th Cir.1993) (upholding award of $2,000,000 where defendant's net worth was $4,524,478,599); *Malandris v. Merrill Lynch*, 703 F.2d 1152 (10th Cir.1981) (remitting award from $3,000,000 to $1,000,000 where defendant had total assets of over 6 billion dollars); *The Post Office v. Portec*, 913 F.2d 802 (10th Cir.1990) (remitting award from $1,500,000 to $500,000 where defendant had a net worth of $6,942,000).[5]

Sufficient guidance to a jury in fixing an appropriate amount of punitive damages, such as its consideration of the defendant's financial capacity, would preserve precious judicial resources and promote finality in jury verdicts. This is so, because such guidance would in many instances eliminate the need for judicial review of the "excessive" jury award. It is also noteworthy that an award of punitive damages of this magnitude determined without the jury's knowledge of

**4.** The model instructions provide, in pertinent part, as follows:

The purpose of an award of punitive damages is, first, to punish a wrongdoer for misconduct, and second, to warn others against doing the same.

In this case you may award punitive damages if you find that Defendant engaged in a discriminatory practice or practices with malice or reckless indifference to the rights of plaintiff to be free from such intentional discrimination in employment.

If you determine that the defendant's conduct justifies an award of punitive damages, you may award an amount of punitive damages which all jurors agree is proper. In fixing the amount, you should consider the following questions: How

reprehensible was the conduct? **What amount is needed, considering the defendant's financial condition, to prevent future repetition?** Does the amount of punitive damages have a reasonable relationship to the actual damages awarded?

If you do award punitive damages, you should fix the amount using calm discretion and sound reason. You must not be influenced by sympathy for or dislike of any party in the case.

**5.** The apparent inconsistency between several of these decisions can be reconciled to some degree in light of the fact that other factors, in addition to financial capacity, such as the defendant's culpability and harm or potential harm to the plaintiff, enter into the calculus in reviewing the reasonableness of the punitive damages awards.

the defendant's financial capacity may not only have a devastating impact on the defendant but may also seriously harm innocent third parties, such as other immediate family members. The Court has considered this as a factor in determining whether "plain error" occurred in this case.

## B. Plaintiff's counsel's misleading statements to jury during closing arguments.

The error in the punitive damages jury instructions was further compounded by Plaintiff's counsel's highly misleading statements to the jury during closing argument. During his closing argument he explained to the jury that it should assess punitive damages as follows:

> It is punitive damages that enables you to say no, this was conduct beyond the pale ... This is your opportunity to send a message ... with your verdict you can talk. You can talk to the bureaucracies and the government agencies ... I'm pretty sure a million dollars isn't nearly enough to talk to those people, to talk to government agencies across the land. Tr. Jan. 6, 1994, pp. 126–128.

■ First, it is well established that municipalities are immune from punitive damages awards. *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Second, the City of Albuquerque was not a defendant in this jury trial. Third, and most importantly, however, these statements were highly likely to mislead the jury into believing that its award would need to be high enough to make the "bureaucracies and government agencies" listen, i.e., to deter/punish the City of Albuquerque and other such entities, rather than to make the Defendant, Mr. Jones, as a private individual or other private individuals like him, listen.

Obviously, the amount required to deter or punish a municipality would be substantially greater than that required to deter or punish a private individual, such as Mr. Jones. Plaintiff's counsel's statements did not refer to deterring or punishing Mr. Jones or deterring or punishing like individuals, but instead referred only to deterring and punishing municipalities. Because of these misleading statements and the skeletal guidance afforded by the Court's jury instructions on the issue of punitive damages it was highly likely that the jury believed that it needed to fix an amount of punitive damages sufficient to deter and punish the City of Albuquerque, rather than Bobbie Jones. In this way, the award of $3,000,000 may reflect an amount, not in proportion to the culpability of the Defendant or reasonably necessary to deter the defendant, but an amount that the jury believed was sufficient to deter and punish the City of Albuquerque. In light of these serious errors, in addition to the tremendous hardships that an award of this magnitude may inflict not only on Mr. Jones, but also on innocent third parties, the Court is compelled to conclude that "plain error" occurred. The Court, therefore, reverses the punitive damages award and grants a remittitur in an amount to be determined following a hearing to ascertain Defendant's financial capacity or should Plaintiff reject the amount remitted, the Court shall grant a new trial on the issue of punitive damages.[6]

WHEREFORE, IT IS ORDERED that Defendant's Motion for a New Trial as to all issues is DENIED;

IT IS FURTHER ORDERED that Defendant's Motion for a Remittitur is GRANTED;

IT IS FURTHER ORDERED that a hearing shall be set promptly before this

---

6. Having determined that a remittitur or a new trial on the issue of punitive damages is required, I do not consider whether the award of punitive damages was excessive. Moreover, the Court is not in a position to conduct a proportionality analysis to determine excessiveness. This is so because, the Defendant, upon whom the burden rests failed to introduce evidence of his financial capacity. However, even if the Court were to determine that the award was so excessive as to "jar one's constitutional sensibilities," *Haslip*, 499 U.S. at 18, 111 S.Ct. at 1043, the Court would not find that the excessiveness gives rise to the inference of passion or prejudice, *Malandris*, 703 F.2d at 1177 (10th Cir.1981), but rather resulted from the inadequate jury instructions and Plaintiff's counsel's highly misleading statements during closing arguments. Thus, the Court would not find that the jury's liability determination was tainted and would not grant a new trial on all issues.

Court to determine Defendant's financial capacity, at which time the Court shall grant a remittitur in an appropriate amount, or should Plaintiff reject the amount remitted, the Court shall grant a new trial on the issue of punitive damages.