MEMORANDUM OPINION AND ORDER
 

 COAR, District Judge.
 

 On December 7, 1995, after a trial on plaintiffs’ civil rights claims under 42 U.S.C. §§ 1981 and 1982, a jury awarded plaintiff Michael Florez a total of $807,500 in damages. This award included $55,000 in nominal or actual damages against defendants Dennis Delbovo (“Delbovo”) and Tandy Corporation (“Tandy”), $2500 in punitive damages against Delbovo, and $750,000 in punitive damages against Tandy. The jury found in favor of defendants as to plaintiff Ann Florez’s claims.
 

 Defendants Delbovo and Tandy have moved to vacate the judgments entered on the jury verdicts, set aside the jury verdicts returned against them and in favor of the plaintiff, Michael Florez, and grant judgment notwithstanding the verdict in their favor on plaintiffs punitive damage claims. In the alternative, defendants Delbovo and Tandy have moved for a new trial on all issues, and in the further alternative, a remittitur of the punitive damages awards.
 

 After careful consideration of the defendants’ post-trial motion, as well as the relevant pleadings, this court has decided to deny the defendants’ motions for judgment notwithstanding the verdict and for a new trial. However, defendants’ motion for a remittitur of punitive damages is granted to the extent stated herein. Initially, this court must note that it has given the defendant the benefit of any doubt in ruling on its post-trial motions and has expressly overruled plaintiffs objections that defendants’ motion for judgment as a matter of law was untimely.
 

 I. Defendants’ Motion for Judgment as a Matter of Law as to Plaintiffs’ Punitive Damage Claims
 

 A. Applicable Standards
 

 Defendants contend that Tandy’s motion for judgment as a matter of law. as to plaintiffs’ punitive damage claims should have been granted. The standard that must be met before judgment as a matter of law may be granted is formidable. Judgment as a matter of law “is proper only if, when the evidence is viewed in the light least favorable to the moving party, the verdict is unsupported.”
 
 Isaksen v. Vermont Castings, Inc.,
 
 825 F.2d 1158, 1163 (7th Cir.1987),
 
 cert. denied,
 
 486 U.S. 1005, 108 S.Ct. 1728, 100 L.Ed.2d 193 (1988). In determining whether to grant or deny such a motion, the district court must first determine “whether the evidence presented, combined Svith all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in a light most favorable to the party to whom the motion is directed.’ ”
 
 Cygnar v. Chicago,
 
 865 F.2d 827, 834 (7th Cir.1989);
 
 see also Tice v. Lampert Yards, Inc.,
 
 761 F.2d 1210, 1213 (7th Cir.1985). A district court is not free to weigh the evidence, judge the credibility of the witnesses, or substitute its judgment of the facts.
 
 Cygnar,
 
 865 F.2d at 834;
 
 Rakovich v. Wade,
 
 850 F.2d 1180, 1188 (7th Cir.) (en banc),
 
 cert. denied,
 
 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988);
 
 Charles Alan Wright & Arthur R. Miller, 9A Federal Practice and Procedure § 2527,
 
 at 282-88 (1995). “If the evidence, taken as a whole, provides a sufficient probative basis upon which a jury could reasonably reach a verdict, without speculation over legally unfounded claims, the motion should be denied.”
 
 Cygnar,
 
 865 F.2d at 835.
 

 
 *1343
 
 B. Defendants’ Claim
 

 In a nutshell, defendants’ main argument for setting aside the jury’s verdict on punitive damages is that punitive damages may only be assessed against a corporation for the misconduct of an employee who acts in a “managerial capacity.” Defendants propose their own definition of “an employee who acts in a managerial capacity” and argue that Delbovo does not fit this definition. They therefore argue that Tandy, as a matter of law, cannot be hable for punitive damages, and that their motion for judgment as a matter of law should have been granted as to the plaintiffs’ punitive damage claims against Tandy. However, as will be discussed in Part II,
 
 infra,
 
 defendants’ proposed definition of “managerial capacity” is not an accurate statement of the law to be applied in this ease.
 

 After reviewing the record, this court finds that there is sufficient evidence to support a jury’s determination that Delbovo acted in a “managerial capacity,” as that term was defined by the jury instruction on punitive damages. Defendants’ motion for a judgment as a matter of law as to plaintiff Michael Florez’s punitive damage claims is therefore denied.
 

 II. Defendants’ Motion For a New Trial
 

 A. Applicable Standards
 

 Defendants have also moved for a new trial. A district court has broad discretion in determining whether or not to grant a new trial.
 
 McNabola v. Chicago Transit Auth.,
 
 10 F.3d 501, 516 (7th Cir.1993). To make this decision, the court must consider “if the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party.”
 
 Id.
 
 (citations omitted). A court may only vacate a jury’s .verdict for excessive damages if the award is “monstrously excessive” or has “no rational connection to the evidence.”
 
 DeBiasio v. Illinois Central R.R.,
 
 52 F.3d 678, 687 (7th Cir.1995);
 
 McNabola,
 
 10 F.3d at 516. If the court decides that a remittitur is appropriate, the plaintiff has the choice to either accept the remittitur or receive a new trial on damages.
 
 See Stafford v. Puro,
 
 63 F.3d 1436, 1445 (7th Cir.1995);
 
 McNabola,
 
 10 F.3d at 516, n. 10;
 
 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 11 Federal Practice and Procedure § 2815,
 
 at 169 (1995). If the plaintiff accepts the remittitur, the motion for a new trial on damages must be denied.
 
 See Nielsen v. Basit,
 
 No. 83 C 1683, 1994 WL 30980, *12 (N.D.Ill.1994) (Norgle, J.), affd w/o op., 62 F.3d 1419 (7th Cir.1995).
 

 Defendants’ motion for a new trial is based on several alleged prejudicial errors. The following sections deal with these alleged errors in turn.
 

 B. Evidence Relating to David Florez
 

 Defendants first argue that there was prejudicial error because their
 
 in limine
 
 motion to bar evidence relating to plaintiffs brother David Florez was denied. However, the jury was instructed to consider this evidence only in relation to the claim of Ann Florez. (Tr., at 379). Because the jury found in favor of the defendants on her claim and because the defendants have not met their burden of showing prejudice against them as to Michael Florez’s claim, their motion for a new trial on this basis is denied.
 

 C. Testimony Concerning Apology
 

 Defendants also argue that prejudicial error occurred because Dr. Forbes was permitted to testify that Ann Florez had pursued an apology from defendants, in violation of this court’s
 
 in limine
 
 order relating to settlement negotiations. However, Forbes’s testimony on direct examination was very brief, did not mention settlement negotiations per se, and was consistent with the psychological testimony she was giving at the time.
 
 (See
 
 Tr., at 110). In addition, defendants did not move to strike the testimony regarding the apology when it came out on direct examination, and, in fact, solicited more extensive testimony from Forbes on the subject of an apology upon cross-examination.
 
 (See
 
 Tr., at 161-63). Because of the clearly non-prejudicial nature of Forbes’s testimony on direct examination and because defendants’ solicited such testimony on cross-examination, defendants’ motion for a new trial on this basis is denied.
 

 
 *1344
 
 D. Jury Instruction on Imposition of Punitive Damages
 

 1.
 
 Definition of “Managerial Capacity”
 

 Defendants next argue that the jury instruction concerning the vicarious imposition of punitive damages did not accurately reflect the law.
 
 [1]
 
 In particular, defendants focus on how that instruction defined “managerial capacity,” since the instruction allowed the jury to award punitive damages against Tandy for the actions of its agent Delbovo if the jury found that Delbovo was employed in a managerial capacity and was acting within the scope of employment.
 

 In support of their own definition of “managerial capacity,” defendants place great weight on the Illinois appellate court’s decision in
 
 Kemner v. Monsanto Co.,
 
 217 Ill. App.3d 188, 160 Ill.Dec. 192, 576 N.E.2d 1146 (5th Dist.1991), which suggested that corporate liability for punitive damages could be imputed only for those acts “specifically ordered, participated in, or ratified by a superi- or officer.”
 
 Id.
 
 at 208, 160 Ill.Dec. at 204-05, 576 N.E.2d at 1158-59. However, as noted by the court in
 
 Roboserve, Inc. v. Kato Kagaku Co., Ltd.,
 
 873 F.Supp. 1124 (N.D.Ill.1995), Illinois courts have not expressly adopted the
 
 Kemner
 
 court approach to the vicarious imposition of punitive damages. Rather, Illinois court decisions show “that the range, of possible definitions [of ‘managing agent’] need not include ‘superior officers,’ ” and that “the baseline [definition of ‘managing agent’] includes only the concept of responsibility for other employees or the oversight of a corporate department.”
 
 Roboserve,
 
 873 F.Supp. at 1138
 
 (citing Abshire v. Stoller,
 
 235 Ill. App.3d 849, 176 Ill.Dec. 559, 601 N.E.2d 1257 (1st Dist.1992),
 
 appeal denied,
 
 148 Ill.2d 639, 183 Ill.Dec. 15, 610 N.E.2d 1259 (1993)). After reviewing the record in this case, this court finds that there was sufficient evidence for the jury to conclude that Delbovo fit into this baseline definition; therefore, defendants’ motion for a new trial on this basis is denied.
 

 2.
 
 Guidance as to Imposition of Punitive Damages
 

 Defendants next assert that the punitive damage instruction failed to provide guidance as to the conditions under which punitive damages could be vicariously imposed on defendant Tandy. In this argument, defendants again call into question the instruction’s definition of “managerial capacity.” This time, the defendants argue that the term “corporate matters” used in that definition was too broad. As such, they argue that the jury could have been misled into finding defendant Tandy liable for the acts of mere sales people, since even such employees have power to exercise “discretion” in dealing with “corporate matters.” However, this argument fails to acknowledge the commonplace meaning of “corporate matters.” That is, that term generally refers to matters that go
 
 beyond
 
 the decisions that mere sales people are required to make. Thus it is unlikely that the jury was confused as to the breadth of the term “corporate matters.” Therefore, defendants’ motion for a new trial on this basis is denied.
 

 3.
 
 Burden of Proof for Imposition of Punitive Damages
 

 Defendants also contend that the jury should have been instructed that the plaintiff needed to have proved punitive damages by clear and convincing evidence and that the failure to do so resulted in prejudicial error warranting a new trial. To support this contention, defendants cite no authority that sets out the “clear and convincing” standard as
 
 *1345
 
 the appropriate one for actions brought under 42 U.S.C. §§ 1981 and 1982. However, the Supreme Court’s position on the burden of proof necessary to impose punitive damages is clear. In
 
 Pacific Mutual Life Insurance Co. v. Haslip,
 
 499 U.S. 1, 22, 111 S.Ct. 1032, 1046, n. 11, 113 L.Ed.2d 1 (1991), the Court stated that punitive damages may be imposed under the “preponderance of the evidence” standard that was used in the instant case. Therefore, defendants’ motion for a new trial on this basis is denied.
 

 E. Evidence of Tandy’s Financial Condition
 

 Defendants also argue that prejudicial error warranting a new trial occurred because the court admitted evidence of Tandy’s financial condition. Defendants argue that the admission of this evidence was “enormously prejudicial,” “highly inflammatory,” and “unwarranted.” This argument appears to be based on defendants’ assertion that the plaintiffs failed to present evidence that would support a punitive damage award against Tandy. However, after reviewing the record in this ease this court finds that the jury could have reasonably found that Delbovo was acting in a managerial capacity and thus could have reasonably awarded punitive damages against Tandy. Nevertheless, it must be noted that the Supreme Court’s recent decision in
 
 BMW of North America, Inc. v. Gore,
 
 — U.S. -, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), appears to disfavor consideration of the defendant’s financial worth and condition in deciding on what level of punitive damages to award. Therefore, the appropriateness of the
 
 level
 
 of the jury’s punitive damage award will be discussed in Part III.
 

 F. Denial of Defendants’ Motion to Bifurcate the Punitive Damages Claim
 

 Defendants also contend that prejudicial error occurred because their motion to bifurcate the punitive damages claim from the underlying claim for compensatory damages was not granted. However, this contention is not supported by any argument or reasoning, and the trial transcript shows no obvious prejudice to the defendant because of the failure to bifurcate the punitive damage claim. Therefore, defendants’ motion for a new trial on this basis is denied.
 

 G. Failure to Perfect Impeachment of Dr. Choca
 

 Defendants next contend that plaintiffs’ cross-examination of defendants’ expert, Dr. Choca, concerning a book written by Dr. Beliak, the primary authority on the Thematic Apperception Test, was improper in that it was an attempt to impeach Choca with a learned treatise never identified or read to the jury. However, after reviewing the relevant testimony, this court finds any error to be harmless. The cross-examination did not “destroy” Choea’s credibility, as defendants contend; rather, the jury could still have given greater weight to Choca’s testimony than to that of the plaintiffs’ expert, Dr. Forbes. In any event, defendants failed to make a timely objection to the impeachment of Choca with the Beliak treatise, and thus any claim of error is waived.
 

 H. Testimony of Alan Demling
 

 Defendants next contend that the testimony of Alan Demling, plaintiffs’ “Caucasian” tester, should not have been admitted because it was irrelevant, confused the issues, and prejudiced the jury against the defendants. After reviewing the relevant testimony, this court concludes that Demling’s testimony was neither irrelevant nor confusing. This court also finds that the probative nature of the evidence was not substantially outweighed by any prejudicial effect it may have had. Therefore, defendants’ motion for a new trial on this basis is denied.
 

 I. Other Jury Instructions
 

 Finally, defendants argue that the “Aggravation of Pre-Existing Emotional Condition,” “Damages for Emotional Distress,” and “Similar Acts” jury instructions were improper. In regard to the first instruction,
 
 [2]
 
 
 *1346
 
 they argue that “[c]lear evidence rarely, if ever, exists of an aggravation of one’s emotional condition.” Defendants’ Post-Trial Motion, at 19. Beyond this assertion, defendants put forward no other reasons for why this instruction constituted prejudicial error. Since the record indicates that plaintiffs did indeed present evidence about aggravation of their emotional condition, the court finds that the instruction was proper.
 

 Second, defendants argue that the instruction on damages for emotional distress unfairly and incorrectly overemphasized recovery for such harm because it was repetitious of other instructions.
 
 [3]
 
 However, an examination of the instructions given in this ease indicates that the “Damages for Emotional Distress” instruction was not overly repetitive of other instructions and that the instructions as a whole did not “overemphasize” the jury’s ability to award damages for emotional distress.
 

 Third, defendants argue that the “Similar Acts” instruction should not have been given because there were no similar acts presented in the ease.
 
 [4]
 
 However, plaintiffs did present evidence that an Hispanic tester, Jose Martinez, was refused service at the same Radio Shack store. Therefore, the court finds that the instruction on similar acts was proper.
 

 III. Defendants’ Motion for Remittitur of the Punitive Damage Award Against Tandy
 

 A. Applicable Standards
 

 The defendant also seek a remittitur of the jury’s punitive damage award of $750,000 on the ground that the award was grossly excessive and contrary to the weight of the evidence. As stated in Part II of this opinion, a court may only vacate a jury’s verdict for excessive damages if the award is “monstrously excessive” or has “no rational connection to the evidence.”
 
 DeBiasio v. Illinois Central R.R.,
 
 52 F.3d 678, 687 (7th Cir.1995);
 
 McNabola,
 
 10 F.3d at 516. If the court decides that a remittitur is appropriate, Florez has the choice to either accept the remittitur or receive a new trial on damages.
 
 See Stafford v. Puro,
 
 63 F.3d 1436, 1445 (7th Cir.1995);
 
 McNabola,
 
 10 F.3d at 516, n. 10;
 
 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 11 Federal Practice and Procedure § 2815,
 
 at 169 (1995). If Florez accepts the remittitur, the defendants’ motion for a new trial on damages must be denied.
 
 See Nielsen v. Basit,
 
 No. 83 C 1683, 1994 WL 30980, *12 (N.D.Ill.1994) (Norgle, J.), aff d w/o op., 62 F.3d 1419 (7th Cir.1995).
 

 
 *1347
 
 B. Appropriateness of Imposing Punitive Damages
 

 Courts have frequently observed that the purpose for awarding punitive damages is to “punish the defendant for reprehensible conduct and to deter him and others from engaging in similar conduct.”
 
 See Kemezy v. Peters,
 
 79 F.3d 33, 34 (7th Cir.1996) (citing cases). It is well settled that a plaintiff who establishes a cause of action under 42 U.S.C. § 1981 may recover punitive damages “under proper circumstances.”
 
 Yarbrough v. Tower Oldsmobile, Inc.,
 
 789 F.2d 508, 514 (7th Cir. 1986)
 
 (citing Johnson v. Railway Express Agency, Inc.,
 
 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975)). The standard for awarding punitive damages under 42 U.S.C. § 1983 is applicable to punitive damages claims arising under § 1981.
 
 Id.
 
 Accordingly, punitive damages may be awarded under § 1981 when the defendant’s conduct “is shown to be motivated by evil motive or intent, or [when] it involves reckless or callous indifference to the federally protected rights of others.”
 
 Id. (quoting Smith v. Wade,
 
 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983)).
 
 [5]
 
 In the instant case, the jury could have reasonably concluded that the conduct of defendants Delbovo and Tandy met this standard. The record does contain evidence of Delbovo’s ill will toward the plaintiff, as well as callous indifference to his federally protected rights. Thus, the jury’s decision to award punitive damages will not be questioned.
 

 C. Excessiveness of the Punitive Damage Award
 

 The question of the excessiveness of the punitive damages award still remains, however. The Supreme Court recently addressed the constitutionality of excessive punitive damage awards in
 
 BMW of North America, Inc. v. Gore,
 
 — U.S. -, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).
 
 [6]
 
 In
 
 BMW,
 
 the Court identified three “guideposts” to consider in evaluating the excessiveness under the Due Process Clause of a punitive damage award rendered in a state court: “the degree of reprehensibility of the nondisclosure; the disparity between the harm or potential harm suffered by [the plaintiff] and his punitive damages award; and the difference between this remedy and the civil [and criminal] penalties authorized or imposed in comparable cases.”
 
 Id.
 
 at ---,-, 116 S.Ct. at 1598-99, 1603.
 

 Though the
 
 BMW
 
 Court was considering whether a
 
 state
 
 law punitive damages award entered in a
 
 state
 
 court violated the Due Process Clause, an issue not present in this case, it nevertheless did examine whether the award was “grossly excessive.” That inquiry is similar to the one posed in this case. While none of the
 
 BMW
 
 “guideposts” are outcome-determinative, they may be helpful in determining whether a federal jury’s award may survive; if a verdict would be unconstitutionally excessive if rendered in a state court, it is difficult to see how the verdict would be permissible simply because it was returned by a federal jury. Therefore, the jury’s punitive damage award in this ease will be examined in light of the guideposts set down in
 
 BMW.
 

 1.
 
 Reprehensibility
 

 The
 
 BMW
 
 Court stated that “punitive damages may not be ‘grossly out of proportion to the severity of the offense.’ ”
 
 BMW,
 
 — U.S. at-, 116 S.Ct. at 1599 (quoting
 
 Pacific Mut. Life Ins. Co. v. Haslip,
 
 499 U.S. 1, 22, 111 S.Ct. 1032, 1045, 113 L.Ed.2d 1 (1991)). The Court suggested a hierarchy of
 
 *1348
 
 reprehensibility, with acts of violence or threats of bodily harm being the most reprehensible, followed by acts taken in reckless disregard for others’ health or safety, affirmative acts of trickery and deceit, and finally, acts of omission and mere negligence.
 
 Id.
 
 — U.S. at---, 116 S.Ct. at 1598-1602. In addition, the Court indicated that conduct is more reprehensible, and thus deserving of greater punishment, if the defendant “repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful.”
 
 Id.
 
 at---, 116 S.Ct. at 1599-1600.
 

 In the instant case, Delbovo’s acts were apparently taken in reckless disregard for others’ health or safety. Under the “hierarchy of reprehensiveness” created by the
 
 BMW
 
 court, Delbovo’s conduct would be more reprehensible than the conduct in issue in
 
 BMW
 
 (since the Court found that BMW made no deliberate false statements and committed no acts of affirmative misconduct). In
 
 BMW,
 
 the Court found that the conduct there gave rise only to “a modest award of exemplary damages” and did not “establish the high degree of culpability that warrants a substantial punitive damages award.”
 
 Id.
 
 at ---, 116 S.Ct. at 1601-02. Though this does not give lower courts much guidance on determining the excessiveness of punitive damage awards for “more reprehensible” conduct, the facts of the instant case suggest that Delbovo’s conduct was only slightly more reprehensible than the conduct in
 
 BMW.
 
 Thus, the reprehensibility of Delbovo’s conduct only warrants a “somewhat-more-than-modest” award of punitive damages.
 

 2.
 
 Ratio of Punitive and Compensatory Damages
 

 The second of the “guideposts” identified by the
 
 BMW
 
 Court is the disparity between the actual or potential harm to the plaintiff and the punitive damages award.
 
 BMW,
 
 — U.S. at---, 116 S.Ct. at 1601-03 (“The $2 million in punitive damages awarded to Dr. Gore by the Alabama Supreme Court is 500 times the amount of his actual harm as determined by the jury.”). The Court stated that “exemplary damages must bear a ‘reasonable relationship’ to compensatory damages.”
 
 Id.
 
 at -, 116 S.Ct. at 1601. While the Court did not set down a presumptive ratio for punitive to compensatory damages, it did note that a punitive damage award of four times the amount of compensatory damages in another case was “close to the line” in terms of constitutional propriety.
 
 Id.
 
 at -, 116 S.Ct. at 1602 (citing
 
 Pacific Mut. Life Ins. Co. v. Haslip,
 
 499 U.S. 1, 23-24, 111 S.Ct. 1032, 1046, 113 L.Ed.2d 1 (1991)).
 

 Michael Florez’s actual damages are $55,-000.00. As in
 
 BMW,
 
 the actual harm in this case is probably identical to or very similar to the potential harm. Thus, the jury’s award of $750,000 in punitive damages against defendant Tandy is more than 13 times the actual or potential damages that Florez suffered. This is clearly “beyond the fine” in terms of constitutional propriety.
 

 3.
 
 Comparison to Civil or Criminal Penalties for Similar Conduct
 

 Finally, the Court identified civil or criminal penalties that could be imposed for comparable conduct as the third indicium of ex-cessiveness of punitive damage awards and directed courts to “accord ‘substantial deference’ to legislative judgments concerning appropriate sanctions for the conduct at issue.”
 
 Id.
 
 — U.S. at-, 116 S.Ct. at 1603 (quoting Br
 
 owning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.,
 
 492 U.S. 257, 301, 109 S.Ct. 2909, 2934, 106 L.Ed.2d 219 (1989) (O’Connor, J., concurring in part and dissenting in part)). There are no federal civil fines or criminal penalties for the conduct in question in the instant ease. However, 42 U.S.C. § 1981a, the statute that is perhaps most similar to 42 U.S.C. § 1981, caps all civil damage awards at $300,000.
 
 See
 
 42 U.S.C. § 1981a(b)(3)(D). This gives at least some indication of Congress’s judgment as to the approximate level of punitive damages.
 

 4.
 
 Other Factors
 

 In his response to the defendants’ motion for remittitur, the plaintiff argues that Tandy’s financial status supports the $750,000 punitive damage award. However, after
 
 BMW
 
 it is unclear what role the finan
 
 *1349
 
 cial status of the defendant plays in determining the excessiveness of punitive damage awards. For example, the
 
 BMW
 
 Court did not list a defendant’s financial condition as one of the “guideposts.” In any event, it is clear that Tandy’s wealth cannot save a punishment that is deemed to be excessive under the
 
 BMW
 
 approach.
 

 D. Conclusion as to Excessiveness of Punitive Damage Award
 

 Given the above considerations, this court finds that the jury’s verdict as to punitive damages was excessive. While Delbovo’s conduct was reprehensible, it was not so egregious to warrant a punitive damage award that exceeded the actual damage award by a 13 to 1 ratio. The largest ratio of punitive damages to compensatory damages in § 1981 or § 1982 actions in this circuit, of which this court is aware, is 5 to 1.
 
 See Phillips v. Hunter Trails Community Ass’n,
 
 685 F.2d 184 (7th Cir.1982) (reducing compensatory damages to $10,000 for each of two plaintiffs and upholding a total punitive damage award of $100,000 under § 1982). In addition, the largest punitive damage award under 42 U.S.C. § 1981 or § 1982 in this circuit, of which this court is aware, is $150,-000.
 
 See Daniels v. Pipefitters’ Ass’n, Local Union No. 597,
 
 945 F.2d 906 (7th Cir.1991) Getting stand $150,000 punitive damage award under § 1981 and 29 U.S.C. § 185 et seq.).
 
 But see Rowlett v. Anheuser-Busch, Inc.,
 
 832 F.2d 194 (1st Cir.1987) (reducing $3,000,000 punitive damage award to $300,-000 under § 1981). Other awards upheld in this circuit have often been as high as $100,-000.
 
 See, e.g., Littlefield v. McGuffey,
 
 954 F.2d 1337 (7th Cir.1992) (upholding $100,000 in punitive damages under § 1982);
 
 Williamson v. Handy Button Machine Co.,
 
 817 F.2d 1290 (7th Cir.1987) (upholding $100,000 in punitive damages under § 1981);
 
 Phillips v. Hunter Trails Community Ass’n,
 
 685 F.2d 184 (7th Cir.1982) (upholding $100,000 in punitive damages under § 1982).
 

 While the jury’s punitive damage award in this case was clearly excessive, they plainly intended to award a significant amount in punitive damages and this intention must be given due regard. Thus, the defendants’ motion for remittitur is granted in the total amount of $475,000. This leaves Florez with a verdict of $332,500, of which $55,000 is for compensatory damages, $2,500 is for punitive damages against defendant Delbovo, and $275,000 is for punitive damages against defendant Tandy.
 

 The extent of this remittitur is based on several factors. First, the fairly egregious nature of the conduct in question calls for a significant award of punitive damages against' Tandy. Second, the ratio of the remitted punitive damage award against Tandy to the compensatory damages is 5 to 1. This comports with other ratios upheld in this circuit,
 
 see Phillips v. Hunter Trails Community Ass’n,
 
 685 F.2d 184 (7th Cir.1982), and is also in line with the Supreme Court’s approximation of the constitutional limit of the ratio,
 
 see BMW,
 
 — U.S. at -, 116 S.Ct. at 1602 (noting that a 4 to 1 ratio was “close to the line”) (citing
 
 Pacific Mut. Life Ins. Co. v. Haslip,
 
 499 U.S. 1, 23-24, 111 S.Ct. 1032, 1046, 113 L.Ed.2d 1 (1991)). Finally, this court finds that the remittitur would fairly compensate Florez without constituting a windfall to him and would also punish Delbovo and Tandy and deter future discriminatory conduct.
 

 In the event that plaintiff should refuse to accept this amount, this court grants a new trial limited to the issue of punitive damages.
 

 TV. Conclusion
 

 WHEREFORE, for the foregoing reasons, defendants Delbovo and Tandy’s motion to vacate the judgments entered on the jury verdicts, to set aside the jury verdicts returned against them, and to grant judgment notwithstanding the verdict in their favor on plaintiffs punitive damage claims is denied. Defendants’ motion for a remittitur is granted; the amount of punitive damages awarded against defendant Tandy is remitted from $750,000 to $275,000. Defendants’ motion for a new trial on the punitive damages issue is provisionally denied pending plaintiff Florez’s decision as to whether to accept the remittitur. If plaintiff agrees to accept total damages in the remitted amount of $332,500, defendants’ motion for a new trial on the punitive damages issue will be denied with
 
 *1350
 
 prejudice. Defendants’ motion for a new trial on all other issues is denied.
 

 [1]
 

 . The jury instruction on punitive damages read as follows:
 

 Defendant Tandy Corporation is a corporation, and can act only through its officers and employees. If you find that the conduct of Mr. Dennis Delbovo was "maliciously” or “wantonly” or "oppressively” done, then you must determine if he was employed in a managerial capacity and was acting within the scope of employment. If you find that Mr. Delbovo was not employed in a managerial capacity and acting within the scope of employment, then punitive damages cannot be awarded against Tandy Corporation. If you find that Mr. Delbovo was employed in a managerial capacity and acting within the scope of employment, then punitive damages may be awarded against Tandy Corporation. An employee acts in a managerial capacity whenever he is invested with general powers to exercise discretion and judgment in dealing with corporate matters.
 

 [2]
 

 . The "Aggravation of Pre-Existing Emotional Condition" instruction read as follows:
 

 If you decide for either of the plaintiffs on the question of liability, you may not deny or limit the plaintiff's right to damages resulting
 
 *1346
 
 from this occurrence because any emotional injury resulted from an aggravation of a preexisting emotional condition or a pre-existing emotional condition which rendered the plaintiff more susceptible to emotional injury.
 

 You are not to award damages for any injury or condition for which the Plaintiffs may have suffered, or may now be suffering, unless it has been established by a preponderance of the evidence in the case that such injury or condition was proximately caused by the incident at the Radio Shack store.
 

 An injury or damage is proximately caused by an act, or a failure to act, whenever it appears from the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission.
 

 [3]
 

 . The instruction on damages for emotional distress read as follows:
 

 While I said earlier that damages must be proved, not all damages are susceptible to an exact determination. If you find that the victims suffered emotional distress or mental anguish as a result of the Defendant's conduct, you should compensate each victim for the harm done.
 

 Emotional distress may be established through the testimony of the victims. Even where no such testimony has been presented, you may infer emotional distress from the circumstances of the discrimination. It is not necessary to present evidence of economic loss or medical evidence of mental or physical symptoms in order to receive compensatory damages for emotional distress.
 

 [4]
 

 . The "Similar Acts” instruction read as follows:
 

 Evidence that an act was done at one time or on one occasion is not any evidence or proof whatever that the act was done in this case.
 

 Then how may you consider evidence of similar acts?
 

 You may consider evidence of similar acts for the limited purpose of showing Defendants’ intent which is at issue in this case.
 

 Such evidence may not be considered for any other purpose whatsoever. You can't use it to reflect on Defendants' character.
 

 [5]
 

 . The United States Supreme Court in
 
 Smith
 
 established the standard for punitive damages awarded in cases arising under 42 U.S.C. § 1983.
 

 [6]
 

 . In
 
 BMW,
 
 the Supreme Court held that a $2 million punitive damages award was grossly excessive in light of the low level of reprehensibility of defendant’s conduct and the 500 to 1 ratio of punitive damages to compensatory damages.
 
 BMW,
 
 — U.S. at---, 116 S.Ct. at 1601-02. Defendant BMW had decided not to advise its dealers of pre-delivery damage to new cars when the cost of repair was less than 3 percent of the car's suggested retail price. The jury returned a verdict of $4,000 in compensatory damages, and $4 million in punitive damages. The Alabama Supreme Court reduced the award to $2 million, finding that the jury improperly computed the punitive damages by multiplying the plaintiff's compensatory damages by the number of similar sales in other jurisdictions.
 
 Id.
 
 at---, 116 S.Ct. at 1593-95.