Lynn FALL, Plaintiff,

v.

INDIANA UNIVERSITY BOARD OF TRUSTEES, and Daniel Cohen, Ph.D., Defendants.

No. 3:96–CV–205.

United States District Court, N.D. Indiana, Fort Wayne Division.

Dec. 30, 1998.

Thomas R. Lemon, Lemon Reed Armey Hearn and Leininger, Warsaw, IN, for Thomas R. Lemon, mediator.

C. Erik Chickedantz, Hawk Haynie Gallmeyer and Chickedantz, Fort Wayne, IN, for C. Erik Chickedantz, mediator.

Brian J. Hurley, R. Bradley Koeppen, Douglas Alexa Koeppen and Hurley, Valparaiso, IN, for Lynn Fall, plaintiff.

Brian J. Hurley, Douglas Alexa Koeppen and Hurley, Valparaiso, IN, for Ava Garrison, plaintiff.

Susan B. Tabler, Ice Miller Donadio and Ryan, Indianapolis, IN, for Indiana University, Indiana University, South Bend, defendants.

John C. Hamilton, Doran Blackmond Ready Hamilton and Williams, South Bend, IN, Thomas W. Belleperche, Hunt and Suedhoff, Fort Wayne, IN, for Daniel Cohen, Ph.D., defendant.

Michael D. Marine, Susan B. Tabler, Constance Baker Phillips, Ice Miller Donadio and Ryan, Indianapolis, IN, for Indiana University Board of Trustees, defendant.

**MEMORANDUM OF DECISION AND ORDER**

COSBEY, United States Magistrate Judge.

## I. INTRODUCTION

On October 2, 1998, after a five day trial in this cause, the jury returned a verdict in favor of the Plaintiff on all three counts of her complaint.[1] The jury found for the Plaintiff and against Defendant Indiana University ("IU"), on the Plaintiff's Title VII claim, but awarded no compensatory damages against IU. The jury also found for the Plaintiff and against Defendant Cohen on both the Plaintiff's equal protection gender discrimination claim under 42 U.S.C. § 1983 (" § 1983"), and her state law assault and battery claim, and awarded compensatory damages in the amount of $5,157 against Defendant Cohen. In addition, the jury awarded punitive damages against Cohen in the amount of $400,000 for both the state law and § 1983 claims, for a total punitive damage award of $800,000.

Now before the Court[2] are the Plaintiff's "Motion to Alter or Amend Judgment," filed on October 9, 1998, and Cohen's "Motions to Alter or Amend the Judgment and For New Trial," filed on October 16, 1998. The Plaintiff's motion contends that the verdict is inconsistent and seeks to amend the judgment to include the $ 5,157.00 compensatory damage award against Defendant IU. IU filed a response to the Plaintiff's motion on October 16, 1998, and the Plaintiff has chosen not to file a reply. Cohen's motion contends that a new trial should be granted for a variety of reasons, or that in the alternative a substantial remittitur should be imposed on the punitive damage award. The Plaintiff filed a response to Cohen's motion on November 12, 1998, Cohen filed a reply on November 20, 1998, and both motions are ripe for review. For the reasons hereinafter provided, the Plaintiff's Motion to Alter or Amend Judgment will be DENIED, and Defendant Co-

hen's Motion to Alter or Amend the Judgment and For New Trial will be GRANTED in part and DENIED in part.

## II. STANDARD OF REVIEW

A new trial may be granted under Fed.R.Civ.P. 59(a) only where "the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Mid–America Tablewares, Inc. v. Mogi Trading Co.,* 100 F.3d 1353, 1367 (7th Cir. 1996) (citations and internal quotations omitted). "A Rule 59(e) motion may only be granted if there has been a mistake of law or fact or if there is newly discovered evidence not previously available." *Gendron v. United States,* 154 F.3d 672, 674 (7th Cir.1998) (citing *Figgie Int'l, Inc. v. Miller,* 966 F.2d 1178, 1180 (7th Cir.1992)); *see also Deutsch v. Burlington Northern R.R.,* 983 F.2d 741, 744 (7th Cir.1992). Neither motion can be used to argue matters that could have been made before the judgment issued, nor can they be used to argue a case under a new legal theory. *E.g., Federal Deposit Insurance Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986) (Rule 59(e)); *Evans, Inc. v. Tiffany & Co.,* 416 F.Supp. 224, 244 (N.D.Ill.1976) (Rule 59(a)).

## III. PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT

Simply stated, the jury in this case was called upon to decide what happened during a meeting between the Plaintiff and Cohen in Cohen's office, behind closed doors, on November 11, 1994. The Plaintiff testified that Cohen grabbed and forcibly kissed her while reaching inside her blouse to fondle her breasts. Cohen, on the other hand, testified that nothing untoward happened during that meeting. The jury believed the Plaintiff's version, but despite the fact that its liability finding was necessarily linked to this single act, it did not award any compensatory

---

1. This Opinion will assume familiarity with the relevant facts, which can be gleaned from the Court's denial of the Defendant's motion for summary judgment found in *Fall v. Indiana University Bd. of Trustees,* 12 F.Supp.2d 870 (N.D.Ind.1998).

2. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

damages against IU, assessing the entire compensatory award against Cohen.

 The Plaintiff argues that such a result is inconsistent, and contends that since the jury found liability against both Defendants for the same act of discrimination, it necessarily follows that any resulting compensatory damages must be awarded equally against both Defendants.[3] Thus, the Plaintiff's motion requests the Court to "correct" the judgment to include liability against IU in the amount of $5,157, which would in effect eviscerate the jury's apportionment of the Plaintiff's damages between the Defendants. The Seventh Circuit has provided clear guidance for analyzing the Plaintiff's argument: "When faced with apparently inconsistent verdict, we are required to reconcile them, if possible, rather than overturn them." *U.S. EEOC v. Century Broadcasting Corp.*, 957 F.2d 1446, 1460 (7th Cir.1992) (citations omitted); *see also Gallick v. Baltimore & Ohio R. Co.*, 372 U.S. 108, 118–22, 83 S.Ct. 659, 665–68, 9 L.Ed.2d 618 (1963); *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962); *Burlew v. Eaton Corp.*, 869 F.2d 1063, 1068 (7th Cir.1989).

Stated somewhat differently, the Plaintiff is really requesting the Court to re-write the verdict so that damages are shared jointly and severally between the two Defendants. The Plaintiff has not pointed to any case law to support the notion that joint and several liability applies between an employer found liable under Title VII and an individual (constitutional) tortfeasor found liable under § 1983, and the Court's own research has not disclosed any opinions even addressing the issue. In any event, it must be recognized that the jury was instructed as follows:

> You may impose damages for an injury solely upon the defendant or defendants that you find are liable for that injury … if you find that both defendants are responsible for a particular injury, you must award damages *in proportion to each defendant's responsibility for that injury.*

Court's Final Instruction No. 35 (emphasis added). Consistent with this instruction, the verdict form permitted the jury to assess compensatory damages separately against Defendant Cohen and Defendant IU. The Plaintiff acquiesced to the use of Instruction No. 35 and the verdict form, and therefore cannot be heard to complain after the fact that the compensatory damages should not

---

**3.** The Court notes that counsel for the Plaintiff failed to raise this argument after the verdict was returned, but before the jury was discharged, despite the fact that the issue was raised by the Court at a bench conference prior to the discharge of the jury. *See* Partial Transcript of Proceedings Pertaining to the Jury's Verdict Held on October 2, 1998 (filed December 14, 1998), at 24–29. In some circuits, the failure to object to an allegedly inconsistent verdict before the jury is discharged waives the argument. *See Coleman v. Lane*, No. 92 C 2726, 1995 WL 170025, at *7 n. 9 (N.D.Ill. April 7, 1995) (collecting cases), *vacated on other grounds*, 1996 WL 167044 (N.D.Ill. April 5, 1996). However, it does not appear that the Seventh Circuit applies the waiver principle to general verdicts. *See Timm v. Progressive Steel Treating, Inc.*, 137 F.3d 1008, 1010 (7th Cir.1998) ("If [verdict] inconsistency escapes notice until after the jury has disbanded, the proper thing to do is to hold a new trial."); *Turyna v. Martam Constr. Co., Inc.*, 83 F.3d 178, 182 (7th Cir.1996) (Rule 59(e) motion was adequate to raise problem of an inconsistent general verdict before the district court); *Gordon v. Degelmann*, 29 F.3d 295, 298–99 (7th Cir.1994) ("If the [inconsistent verdict] problem is not caught before the jury disbands (and no one noticed this conflict until post-trial motions) the proper thing

to do is to hold a new trial with respect to all affected parties.").

However, it is clear that waiver would apply here if the verdict could properly be considered a "Special Verdict" or a "General Verdict Accompanied by Interrogatories" under Fed.R.Civ.P. 49(a) or (b), rather than a general verdict. *See Strauss v. Stratojac Corp.*, 810 F.2d 679, 683 (7th Cir.1987) (a party may waive its right to object to inconsistencies between a general verdict accompanied by special interrogatories pursuant to Rule 49(b)); *Barnes v. Brown*, 430 F.2d 578, 580 (7th Cir.1970) (same). Although the verdict form in this case is captioned "Special Verdict Form," and included a special interrogatory, it nonetheless should properly be construed as a general verdict, because it did not require to jury to answer any particular factual question. *See Turyna*, 83 F.3d at 180–82 (neither Rule 49(a) or 49(b) are applicable when the jury is not required to render specific written findings of fact).

Nevertheless, as discussed *infra* the Plaintiff has waived any argument that can be construed as an indirect attack on the jury instructions or the verdict form itself. *Bogan v. Stroud*, 958 F.2d 180, 184 (7th Cir.1992) (citing *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 675 (7th Cir.1985)).

have been apportioned between the Defendants. *Bosco v. Serhant*, 836 F.2d 271, 281 (7th Cir.1987); *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1387 (7th Cir.1984). *Cf. Bogan v. Stroud*, 958 F.2d 180, 184 (7th Cir. 1992) ("the magistrate judge's instruction to the jury that it could award punitive damages absent a finding of actual damages became the law of this case.").

Moreover, even assuming that IU could possibly be held jointly and severally liable for Cohen's act, the particular evidence presented to the jury demonstrated that this was an appropriate case for the jury to properly employ their discretion in apportioning damages between the two defendants. *See Gentile v. County of Suffolk*, 926 F.2d 142, 154 (2d Cir.1991). Indeed, the jury's distribution of damages is not only explainable, but understandable given the evidence presented at trial. This is not a § 1983 case where it is impossible to distinguish between the two Defendants' contributions to the plaintiff's injuries, as was the case in *Cooper v. Casey*, 97 F.3d 914, 919 (7th Cir.1996). Rather, this is a case where the evidence at trial demonstrated some factual basis for permitting the jury to establishing an estimate of each defendant's liability for the harm caused. *See* W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 52, pp. 345 (5th ed. 1984) ("There will be obvious difficulties of proof as to the apportionment of certain elements of damages, such as physical and mental suffering and medical expenses, but such difficulties are not insuperable, and it is better to attempt some rough division than to hold one defendant for the wound inflicted by the other."); 1C MARTIN A. SCHWARTZ AND JOHN E. KIRKLAND, SECTION 1983 LITIGATION: CLAIMS AND DEFENSES § 16.22, p. 316 (3d ed. 1997) ("Apportionment of damages is appropriate so long as there is a factual basis for at least a rough estimate limiting a defendant's liability to that part of the harm caused.")

For example, the Plaintiff testified repeatedly, both on direct examination and in response to cross-examination, that much of the anger and distress for which she sought compensation was directed at IU's failure (in her mind) to terminate Cohen's employment. However, the Court ruled as a matter of law

that IU exercised reasonable care to promptly correct Cohen's sexually harassing behavior, *see Fall*, 12 F.Supp.2d at 881 & n. 11, and accordingly instructed the jury (without objection) that "the Plaintiff is not entitled to any emotional distress damages arising out of her feelings regarding Indiana University's corrective actions." Court's Final Instruction No. 34. Indeed, IU's counsel emphasized this point in closing argument, and therefore the jury was presented with an adequate factual and legal basis for finding Cohen solely responsible for the injuries for which the Plaintiff sought compensation. *Cf. Palmer v. City of Monticello*, 31 F.3d 1499, 1508 (10th Cir.1994) (jury in § 1983 case could have understandably apportioned $1.00 in damages against an individual defendant, and $253,188 against the city).

In sum, the Plaintiff has not established that the jury's award of $5,157 in compensatory damages against Cohen and zero compensatory damages against IU resulted from a mistake of fact or law. Her theory for joint and several liability is a novel one that is not only unsupported by case law, but was raised for the first time in her Rule 59(e) motion, and most importantly the verdict comports with the instructions and evidence presented to the jury. Therefore, the Plaintiff's motion to alter or amend judgment will be denied.

## IV. DEFENDANT COHEN'S MOTION FOR A NEW TRIAL

Cohen advances several reasons why a new trial should be granted as to both liability and damages. We shall address his contentions seriatim.

### A. Bifurcation

Cohen's first point restates a position and argument that the Court has twice considered and twice rejected: Cohen's proposed bifurcation of the trial. Cohen contends that the Court erred in denying his pre-trial motion to bifurcate the trial into two phases, one limited to the state law assault and battery claim, and then, if necessary, a phase adjudicating the liability components of both the § 1983 and the Title VII claim, as well as the damages components for all three

claims. Cohen correctly points out that the latter two claims hinge upon the jury finding that the alleged acts of November 11, 1994, occurred, and opines that that issue should have been resolved without the jury hearing certain evidence relating to the federal law claims (i.e., the evidence pertaining to Cohen's behavior with other women, which was relevant evidence of Cohen's intent under the § 1983 claim, and the Boardman report, which was relevant evidence supporting both the Plaintiff's Title VII claim and the Defendant's Title VII affirmative defense). After reviewing the record a third time, the Court is convinced that no unfairness resulted from denying Cohen's previous motions to bifurcate the trial.[4]

### 1. Standard

The Seventh Circuit has clearly articulated the standards guiding the bifurcation inquiry:

Federal Rule of Civil Procedure 42(b) permits the separate trial of any issue when separation would be "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy. Only one of these criteria need be satisfied for a court to enter a separate trial. We review a district court's bifurcation decisions for abuse of discretion."

*Berry v. Deloney*, 28 F.3d 604, 610 (7th Cir. 1994) (quoting *DeWitt, Porter, Huggett v. Kovalic*, 991 F.2d 1243, 1245 (7th Cir.1993)) (internal quotations and citations omitted).

### 2. "In the Furtherance of Convenience or to Avoid Prejudice"

Cohen argues that bifurcation would have been in furtherance of convenience because,

as even counsel for the Plaintiff acknowledged, if Cohen had prevailed on the battery claim the trial would have ended at that point. However, it is clear that if the battery claim had been tried first and the Plaintiff had prevailed, a great inconvenience and inefficient use of resources would have occurred for all concerned. For example, IU did not oppose the idea of bifurcation in principle, but significantly conditioned this view on the understanding that while it would remain on the sidelines during the battery phase, it would still be permitted to make an opening statement at the beginning of the § 1983/Title VII phase, and would be allowed to recall any witnesses that testified during the battery phase for either direct or cross-examination. Obviously, the necessity of recalling witnesses from the first phase to testify in the second phase would hardly be "in the furtherance of convenience" for anyone, particularly the witnesses themselves.

■ However, the main thrust of Cohen's argument is that bifurcation was necessary to avoid the extreme prejudice that he purportedly suffered from the introduction of evidence about his behavior towards other women and the conclusions of the Boardman report. According to Cohen, this evidence "destroy[ed] the possibility of a fair trial by no later than the second day." Cohen's Reply Mem. to his Motion for a New Trial, at 3. This rather self-serving view of the trial proceedings overlooks the legal effect of the limiting instructions given by the Court to the jury each time such allegedly prejudicial evidence was introduced, admonitions which were also repeated in the Court's final instructions.[5] Indeed, the Seventh Circuit held

---

4. The possibility of bifurcation was raised for the first time in the first final pretrial conference held in this case on July 31, 1998. At that time the Court believed the concept deserved serious consideration, and called for the parties to brief the subject. All parties filed both initial briefs and responses to support their positions on bifurcation, which provided much of the basis for the Court's initial denial of the motion to bifurcate in its Memorandum of Decision and Order dated September 4, 1998. On September 14, 1998, Defendant Cohen filed what the Court construed to be a motion to reconsider, *inter alia*, the Court's decision on the bifurcation issue, which the Court denied on September 17, 1998.

5. The Court repeatedly admonished the jury that they were to consider such evidence only for the purposes of establishing Cohen's intent to discriminate based upon gender, or to show that IU may have had prior notice of alleged acts of Cohen before November 11, 1994. Each limiting instruction further admonished the jury that this evidence was not to be considered for any other purpose, and emphasized that liability attached, if at all, only as to Defendant Cohen's conduct on November 11, 1994.

The final jury instructions re-emphasized the point:

During the course of the trial you were instructed that certain evidence could only be

in *Berry* that the use of similar limiting instructions "dispelled any potential prejudice" from the introduction of potentially prejudicial evidence, *Berry*, 28 F.3d at 608, and concluded that "[t]he trial court's repeated admonition to the jury to consider the disputed evidence only in assessing damages *precluded any need for a bifurcated trial.*" *Id.* at 610 (emphasis added).[6]

Moreover, the fact that proper limiting instructions dispelled the prejudicial effect of the disputed evidence in *Berry* weighs heavily against Cohen's claim of undue prejudice in this case. *Berry* involved a § 1983 action by a high school student against a school truant officer with whom she allegedly had a non-consensual sexual relationship. In addition to emotional distress damages, the plaintiff sought damages for the physical pain of being impregnated by the defendant, and for her subsequent abortion. The truant officer could not deny that he had sexual relations with the student, having pleaded guilty to "statutory rape" in state court on that score, but defended against the § 1983 action by denying that he had impregnated the student, and by arguing that her asserted damages stemmed from other abortions she had undergone. To this end, the truant officer sought to present evidence of the student's sexual activity with others during the time of his contact with her, as well as evidence of

her other abortions both before and after his contact with her.

The trial court determined, pursuant to Fed.R.Evid. 403, that this evidence was admissible only as to the issue of damages.[7] As Cohen did here, the student moved to bifurcate the trial into a liability and damages phase in an effort to keep this inflammatory evidence from tainting the jury's liability determination. The trial court denied the motion, stating that a limiting instruction would dissipate any threat of undue prejudice. As discussed *supra,* the Seventh Circuit held that this course of action did not constitute an abuse of discretion, particularly since the trial court had weighed the probative value of the evidence against its prejudicial effect, and had employed an appropriate limiting instruction.

In our view, the degree of potential prejudice associated with the evidence objected to by Cohen pales in comparison to the prejudicial effect of the evidence relating to the *Berry* plaintiff's sexual history and previous abortions. Notably, however, this Court acted almost identically to the trial court in *Berry,* balancing the probative value of the evidence against its prejudicial effect, finding that this evidence was admissible for limited purposes, and so instructing the jury each and every time this evidence was presented. Moreover, this Court, as did the trial court in *Berry,* reinforced the admonitions by repeat-

considered by you for limited purposes. Some evidence was only allowed for the limited purpose of determining the Plaintiff's damages, if any, and some evidence was for the limited purpose of showing that Defendant Indiana University may have had prior notice of information pertaining to alleged acts of Defendant Cohen before November 11, 1994, and some evidence was for the limited purpose of showing Defendant Cohen's intent to discriminate based upon gender. Where so limited, this evidence may not be considered for any other purpose, because liability attaches, if at all, only as to Defendant Cohen's conduct on or after November 11, 1994.
Court's Final Instruction No. 14.

6. Cohen's argument necessarily suggests that the jury failed to follow the Court's limiting and final instructions. However, we must presume that the jury followed its instructions. *Berry*, 28 F.3d at 608 (citing *United States v. Kreiser*, 15 F.3d 635, 641 (7th Cir.1994); *Stutzman v. CRST, Inc.*, 997 F.2d 291, 297 n. 2 (7th Cir.1993)). *Accord Richardson v. Marsh*, 481 U.S. 200, 211, 107

S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987) (holding that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction); *United States v. McClinton*, 135 F.3d 1178, 1189 (7th Cir.1998) ("We rely on our belief that juries heed the instructions.") (internal quotations and citations omitted). Significantly, Cohen has not articulated any cognizable reason (beyond his own subjective, self-serving assertions of prejudice) for disregarding this well established principle.

7. As alluded to *supra*, this Court found, and Cohen appears to concede, that the evidence to which he objects was relevant to the Plaintiff's federal claims. Thus, Cohen's argument on the motion to bifurcate, as well as the Rule 403 and Rule 404 objections he raised in his motion in limine, is limited to the fact that the prejudicial effect of this evidence substantially outweighed its probative value.

ing them in the final instructions. Given that the Seventh Circuit affirmed the trial court in *Berry*, a much closer case, we do not believe that the refusal to bifurcate the trial here constituted an error of law, or resulted in an unfair trial.

### 3. "Conducive to Expedition and Economy"

As mentioned *supra;* it is evident that if the trial had been bifurcated according to Cohen's plan, and if the Plaintiff had prevailed in the first phase, then many of the witnesses and much of the testimony presented in the first phase would have to be presented again in the second phase, a result which obviously would not have been conducive to expedition and economy. As the Court explained in its prior rulings, this case does not resemble a personal injury action, where liability and damages evidence can be neatly compartmentalized. In fact, it was clear prior to trial that the parties intended to present evidence relating to the Plaintiff's alleged emotional damages to either establish or refute whether Cohen's alleged act actually took place. *See Martin v. Heideman,* 106 F.3d 1308, 1312 (6th Cir.1997) (evidence of psychological injury was relevant to the question of liability); Defendant Daniel H. Cohen's Motion for Extension of Time Within Which to Serve and File Expert's Report, at 2 (Docket # 216) (acknowledging that Cohen's medical expert testimony may be relevant to the question of liability). This perception became reality during the trial when the evidence of the Plaintiff's psychological damages was presented, and particularly when it was attacked, and supports the Court's prior conclusions that bifurcation would not have been practical because it would have involved the same witnesses testifying in both parts of the trial. *See Berry,* 28 F.3d at 609.

This point illustrates the rather one-sided nature of Cohen's bifurcation argument, in that the economies and expediency that bifurcation is designed to achieve would only have been realized if Cohen had prevailed in the first phase. This evinces a rather limited utility of the bifurcation procedure, and stands at odds with the Seventh Circuit's recent emphasis that the district court must "carve at the joint" when bifurcating pursuant to Rule 42(b). *In re Rhone–Poulenc Rorer, Inc.,* 51 F.3d 1293, 1302–02 (7th Cir. 1995); *Hydrite Chemical Co. v. Calumet Lubricants Co.,* 47 F.3d 887, 890–91 (7th Cir. 1995). It certainly cannot be considered to be "carving at the joint" if the benefits of bifurcation are dependent upon only one party prevailing in the first phase, particularly in a case such as this where a marked and unnecessary waste of time and resources would occur in the second phase if the opposing party prevailed in the first phase. In sum, after reviewing the issue for a third time, the Court is convinced that neither of the two criteria supporting bifurcation were satisfied in this case, and consequently Cohen's motion for a new trial must be denied on this issue.

### B. The Jury's Liability Determination Was Not Against the Weight of the Evidence

 Cohen argues that the jury's liability determination was not supported by the weight of the evidence. However, as explained *supra,* this case was a paradigm "he said/she said" dispute, because the Plaintiff and Cohen are the only two people who really know whether the alleged events actually occurred. Accordingly, credibility was the jury's paramount consideration. While Cohen argues that the Plaintiff's testimony was so "problematic" that it simply could not be believed, our review of his Rule 59(a) motion is "limited to determining whether the evidence presented, combined with all reasonable inferences that may be drawn from it, is sufficient to support the verdict when viewed in the light most favorable to the plaintiff." *Hutchison v. Amateur Electronic Supply, Inc.,* 42 F.3d 1037, 1042 (7th Cir.1994) (citation omitted). Moreover, we must be "particularly careful in employment discrimination cases to avoid supplanting our view of the credibility of the evidence for that of . . . the jury. . . ." *Riemer v. Illinois Dep't of Transportation,* 148 F.3d 800, 806 (7th Cir.1998) (quoting *Hutchison,* 42 F.3d at 1042) (internal citation omitted). During the five days of trial the jury was presented with substantial evidence that would have supported a verdict for either side, including,

most importantly, the live testimony of both Cohen and the Plaintiff. The jury chose to believe the Plaintiff and not Cohen, and this credibility determination was not against the weight of the evidence.

### C. Punitive Damages

Cohen's motion also raises several arguments for a new trial that are limited to the issue of punitive damages.[8]

#### 1. The Punitive Award Does Not Invalidate the Liability Determination

 Cohen's first argument is that the excessiveness of the punitive damages award ($800,000.00), when compared to the jury's compensatory damages award of $5,157.00, demonstrates that the jury was infected with such an irrational "inflamed passion" that its liability determination must be questioned. *See Ustrak v. Fairman*, 781 F.2d 573, 578–79 (7th Cir.1986); *Douglass v. Hustler Magazine*, 769 F.2d 1128 (7th Cir. 1985). The punitive damage award does indeed cause the Court to "raise a suspicious judicial eyebrow," *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 482, 113 S.Ct. 2711, 2732, 125 L.Ed.2d 366 (1993) (O'Connor, J., dissenting), as we shall discuss more fully below. However, Seventh Circuit authority is clear that when a damages award is found excessive the proper remedy is generally a remittitur, not a new trial. *Davis v. Consolidated Rail Corp.*, 788 F.2d 1260, 1263 (7th Cir.1986) ("Only in an unusual case will a court order a new trial on

liability because of an error in assessing damages").

Cohen's argument that the jury's liability determination should be set aside on the basis of the unreasonable punitive damage award is undermined by the jury's relatively modest compensatory damages award of $5,157 (an amount which, as noted *supra,* Cohen does not suggest is excessive or unreasonable). In our view, the apparent reasonableness of the compensatory award supports a belief that the jury arrived at its liability determination in a calculated and proportionate manner. This conclusion is bolstered by the fact that the jury was properly instructed that compensatory and punitive damages are awarded for very separate and distinct purposes. *Compare* Court's Final Instruction No. 28 (explaining purpose of compensatory damages), *with* Court's Final Instruction Nos. 30 & 31 (explaining purpose of punitive damages).[9] Thus, the fact that the jury's punitive damages award may represent an unreasonable attempt at "over deterrence," or a disproportionate punishment, does not indicate that their liability determination was similarly flawed, particularly in light of the apparently reasonable compensatory award. Indeed, Cohen has pointed to "nothing in the record, other than the size of the [punitive] award, to impeach the objectivity of the jury or the fairness of the proceedings." *Dorin v. The Equitable Life Assurance Society of the United States*, 382 F.2d 73, 78 (7th Cir.1967). Accordingly, the Court is not convinced that the jury's punitive damages award renders this case so "unusual" that a new trial on liability is warranted. *Davis*, 788 F.2d at 1263.[10] Rather, the Court

8. Cohen's motion for a new trial does not take issue with the jury's compensatory damages award. Therefore, this Order, and the remittitur that will be applied, will not affect the compensatory award.

9. *See Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 306–07 & n. 9, 106 S.Ct. 2537, 2542–43 & n. 9, 91 L.Ed.2d 249 (1986) (emphasizing the distinction between the purposes of compensatory and punitive damages) (§ 1983 case); *Watson v. Thibodeau*, 559 N.E.2d 1205, 1209 (Ind.App.1990) ("The purpose of compensatory damages is to award or impose a pecuniary compensation, recompense, or satisfaction for an injury done or wrong sustained by a party. In contrast, punitive damages are not compensatory in nature but are assigned to punish the wrong-

doer and deter similar conduct in the future.") (citations omitted) (Indiana law). *See generally Kemezy v. Peters*, 79 F.3d 33 (7th Cir.1996) (reviewing various rationales for awarding punitive damages).

10. In *Ustrak*, the jury had awarded $15,000 in punitive damages for what the Seventh Circuit described as "at worst a trivial deprivation" of the plaintiff prisoner's First Amendment rights, stating that "[a]ny award of punitive damages in excess of $1,000 would be unconscionable." *Ustrak*, 781 F.2d at 579–80. In *Douglass* the Seventh Circuit granted a new trial, *inter alia*, because it found a compensatory damage award "absurd" and far in excess of comparable awards. *Douglass*, 769 F.2d at 1143–45.

will deal with the excessiveness issue in the usual course and grant a remittitur as to the punitive damages.[11]

### 2. The Punitive Awards Are Not Duplicative

 Cohen also challenges the jury's punitive damages award as duplicative, in that it awards the Plaintiff twice for one injury. *See, e.g., Indiana Harbor Belt R.R. Co. v. American Cyanamid Co.,* 860 F.2d 1441, 1445 (7th Cir.1988) ("a claimant who has set forth a number of legal theories in support of only one possible recovery has stated only one claim for relief."). While courts have held that the traditional rule against double recoveries applies to punitive damage awards, the recovery of punitive damages on both a state law and a § 1983 claim stemming from the same act is not *per se* prohibited. *Mason v. Oklahoma Turnpike Auth.,* 115 F.3d 1442, 1459–60 (10th Cir.1997). *Cf. Gentile v. County of Suffolk,* 926 F.2d 142, 153–54 (2d Cir.1991) ("defendants do not demonstrate that a jury's award is duplicative merely by noting that it allocated the damages under two different causes of action."). Indeed, "[i]n some cases, multiple punitive damage awards on overlapping theories of recovery may not be duplicative at all, but may instead represent the jury's proper effort to punish and deter all the improper conduct underlying the verdict." *Mason,* 115 F.3d at 1460.

> In contrast, the Plaintiff in this case clearly suffered more than a trivial deprivation of her constitutional rights, and, as explained *supra,* the jury's relatively reasonable compensatory damages award does not support an inference that its liability decision was tainted by passion or prejudice.

11. The Court notes that the Supreme Court's thorough decision in *BMW of North America v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), did not consider the possibility that a punitive damages verdict so "grossly excessive" that it violated due process would support an inference that the jury's liability verdict was somehow invalid. The jury's compensatory damages award in that case of $4,000 was apparently a reasonably accurate estimate of the actual injury. *Id.* at 564 & n. 4, 116 S.Ct. at 1593 & n. 4.

12. *Compare* Court's Final Instruction No. 19 (outlining the elements of the assault and battery

The jury in this case was instructed, without objection, to consider punitive awards that would both punish past acts and deter similar future acts of two separate and distinct types of conduct; a state common law prohibition against rude, insolent touching on the one hand, and a federal constitutional prohibition of intentional gender discrimination on the other.[12] The jury was further instructed that it was not to compensate the Plaintiff twice for the same injury. *See* Court's Final Instruction No. 35. Therefore, the jury's award of compensatory damages on both the state law and § 1983 claims could reasonably represent an intent to punish and deter Cohen's disregard for each of the unique types of improper conduct which it was called upon to consider, namely Indiana's state policy against violence and the federal constitution's prohibition against gender discrimination. *See Mason,* 115 F.3d at 1460.[13]

The jury's intent to award punitive damages separately for each type of improper conduct presented to them is clearly evidenced by their answers to the two special interrogatories posed to them. The special interrogatory that was originally incorporated into their verdict form required the jury to specifically identify the standard of proof upon which they based their award of punitive damages on the § 1983 claim. The jury's answer indicated that their § 1983 punitive award was based upon a preponderance of the evidence, which of course differs

claim), *and* Court's Final Instruction No. 30 ("Punitive damages may be awarded [on the assault and battery claim] in such sum as you believe will ... deter the defendant and others like him *from like conduct in the future.*") (emphasis added), *with* Court's Final Instruction No. 25 (outlining the elements of the § 1983 gender discrimination claim), *and* Court's Final Instruction No. 31 ("you should consider whether punitive damages are likely to deter or prevent other persons *from performing wrongful acts similar to those Defendant Cohen may have performed* [in violation of § 1983]") (emphasis added).

13. The Ninth Circuit relied upon the *Mason* decision in a subsequent unreported decision upholding a jury's award of punitive damages on both a § 1983 sexual harassment claim and a state law intentional infliction of emotional distress claim. *See Mockler v. Multnomah County,* 141 F.3d 1177, 1998 WL 166529, at *5 (9th Cir. March 31, 1998) (Table).

from the clear and convincing standard upon which they were required to base their state law punitive award. *See* Court's Instruction No. 30; *Travelers Indem. Co. v. Armstrong,* 442 N.E.2d 349 (Ind.1982) (establishing clear and convincing burden of proof to obtain punitive damages under Indiana law). The fact that the jury identified their punitive damage awards as falling under two different burdens of proof evidences their awareness of the differences between the state law and § 1983 claims, and accordingly indicates an intent to punish Cohen independently for the separate harms arising from each claim. *Mason,* 115 F.3d at 1460.

Moreover, the jury was provided with an opportunity to explicitly explain their intentions with regard to their punitive damages award when they first returned their verdict. While initially reviewing the verdict form prior to its publication, the Court observed that the jury had awarded the exact same amount of punitive damages ($400,000) on both the state law and § 1983 claims, which raised a question of whether the jury had intended their total punitive damages award for both claims to be $400,000 or $800,000 in total. The Court discussed this concern with all counsel at a sidebar conference, then prepared a second special interrogatory to allow the jury to correct this potential ambiguity by specifying the total amount of punitive damages it intended to award. *See* Partial Transcript of Proceedings Pertaining to the Jury's Verdict held on October 2, 1998, at 24–29. The jury answered the special interrogatory by indicating that its total assessment of punitive damages was $800,000, which unequivocally indicated its intention to punish Cohen on both· available theories. *Mason,* 115 F.3d at 1460.

The Court's employment of the second special interrogatory also raises another point, because the Court's discussions with counsel about this aspect of the jury's verdict obviously alerted all counsel to the possibility that the jury might return a punitive damage award on both the state law claim and the § 1983 claim.[14] Significantly, the Court also allowed all counsel the opportunity to make any objections to the second special interrogatory prior to presenting it to the jury, but no objections were made. *See* Partial Transcript of Proceedings Pertaining to the Jury's Verdict held on October 2, 1998, at 28–29. Cohen's failure to object to the use of the verdict form prior to trial, and particularly his failure to object to the special interrogatory that sought clarification from the jury on this very point, would appear to preclude him from now arguing that the jury's award was duplicative. *See Bogan,* 958 F.2d at 184 (district court's instructions, even if erroneous, become the law of that case); *see also King v. Macri,* 993 F.2d 294, 299 (2d Cir. 1993); *Gentile,* 926 F.2d at 154. In any event, we will not upset the jury's punitive damages award on the basis that it provided a duplicative recovery. *Cf. Gentile,* 926 F.2d at 154 ("It is, of course, possible that the jury committed the error of duplicating damages here, but defendants have failed to establish this allegation with any degree of certainty.").

### 3. The Punitive Awards Were Supported By Sufficient Evidence

Cohen asserts that the jury's award of punitive damages as to both the state law and § 1983 claims were not supported by sufficient evidence, and therefore must be vacated. As to the assault and battery claim,

> [p]unitive damages must be supported by clear and convincing evidence. The evidence must overcome the presumption the defendant's conduct was merely negligent or the result of some honest error. Punitive damages are only recoverable upon evidence the defendant acted with malice, fraud, gross negligence, or oppression which did not result from mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other human failing. The defendant is cloaked with the rebuttable presumption his actions, though perhaps tortious, were nevertheless noniniquitous human failings.

and no one objected to its use.

---

**14.** Of course, the verdict form itself allowed for the jury to return two punitive damage awards,

*Watson,* 559 N.E.2d at 1210 (internal citations omitted). Punitive damages are appropriate in § 1983 cases when the defendant's conduct is "motivated by evil intent or callous indifference to the federally-protected rights" of the plaintiff. *Graham v. Satkoski,* 51 F.3d 710, 714 (7th Cir.1995) (citations omitted); *see also Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983).

▆▆▆ As we have discussed, this case came down to a credibility contest, and we will not question the jury's acceptance of the Plaintiff's testimony that Cohen grabbed her, forcibly kissed her, forced his hand down her blouse, and fondled her breast. This forceful and deliberate act is clearly sufficient to support an award of punitive damages on both claims. *Merriweather v. Family Dollar Stores of Indiana, Inc.,* 103 F.3d 576, 581 (7th Cir.1996) ("Evidence that suffices to establish an intentional violation of protected civil rights also may suffice to permit the fact finder to award punitive damages, provided the [jury], in its discretionary moral judgment, finds that the conduct merits a punitive award.") (citation omitted); *Gutzwiller v. Fenik,* 860 F.2d 1317, 1329 (6th Cir.1988) ("In our view, the question of whether [the defendants] exhibited such conduct is a matter well within the province of the jury, as it requires the type of moral judgment that lay persons make every day.").

*4. Ind.Code § 34–51–3–4 Does Not Apply*

▆▆▆ Cohen also points to a "tort reform" measure enacted by the Indiana legislature on July 1, 1998,[15] to argue that the Plaintiff's state law punitive damage award must be reduced as a matter of law. The statute at issue provides that:

**15.** Ind.P.L. 1–1998, § 47, July 1, 1998.

**16.** Cohen contends that the Indiana Legislature intended to cap punitive damages at three times compensatories in cases such as this one, where the trebled compensatory amount does not exceed $50,000, because, as he astutely points out, "[o]therwise ... courts would be enmeshed in figuring [whether] to award greater than three times compensatory damages in the smallest of punitive damage cases." This may well have been the legislature's intent, but the plain wording of the statute does not speak to the *lesser* of three times compensatories or $50,000. Indeed, the statute clearly employs the permissive command "may," and therefore plainly permits

A punitive damage award may not be more than the *greater* of:

(1) three (3) times compensatory damages awarded in the action; or

(2) fifty thousand dollars ($50,000).

Ind.Code § 34–51–3–4 (1998) (emphasis added). Cohen contends that although this statute was enacted after this case was filed, it nevertheless applies retroactively and mandates that the Plaintiff's damages be limited to three times her compensatory damage award, or $15,471.[16] We disagree.

▆▆▆ The analysis employed by the Indiana courts to determine whether a statute should be given prospective or retroactive effect is well established:

Whether a statute or amendment is to be applied retroactively to pending cases or only prospectively depends on the legislature's intent. Absent an express indication otherwise, we presume that the legislature intends statutes and amendments to apply prospectively. *Strong and compelling reasons must exist for retroactive application.*

*Chesnut v. Roof,* 665 N.E.2d 7, 9 (Ind.App. 1996) (internal citations omitted) (emphasis added). Ind.Code § 34–51–3–4 contains no express statement regarding whether it is to be applied retroactively. However, Cohen argues that the statute should be given retroactive effect because it is procedural in nature, and not substantive, and that its retroactive effect can also be implied by comparing it to Ind.Code § 34–51–2–1 (1998).

▆▆▆ Even if we were to assume *arguendo* that the statute is indeed procedural in nature,[17] that would not end our inquiry, be-

courts to "cap" punitive damages at the *greater* of either three times compensatories or $50,000. Whether the legislature actually intended this seemingly curious result, or whether the statute should be interpreted differently from its plain meaning will presumably soon be the matter of substantial attention in Indiana courts. However, given our holding that the statute should not be applied retroactively, we shall not be the first court to make this determination.

**17.** Cohen argues that Ind.Code § 34–51–3–4 is purely procedural in nature even though it affects the Plaintiff's right to punitive damages. *See Landgraf v. USI Film Products,* 511 U.S. 244, 283–85, 114 S.Ct. 1483, 1506–07, 128 L.Ed.2d

cause the Indiana Supreme Court has long held that a statute is not to be applied retroactively merely because it is procedural in nature. *See State ex rel. Uzelac v. Lake Criminal Court,* 247 Ind. 87, 212 N.E.2d 21, 24 (1965) ("It is true, statutes and rules as to procedural and remedial matters may be made to operate retroactively, *but it is not true that they must apply retroactively.*") (emphasis added). *Cf. State v. Judd,* 554 N.E.2d 829, 832 (Ind.App.1990) ("Having found that the statute is remedial, however, does not end the analysis."). Rather, the party seeking retroactive application must show some strong and compelling reason why even procedural statutes ought to be applied retroactively. *Gosnell v. Indiana Soft Water Serv., Inc.,* 503 N.E.2d 879, 880 (Ind.1987) ("Unless there are strong and compelling reasons, statutes will normally be given prospective application. While statutes addressing merely procedural and remedial matters may be applied retroactively, such application is not required.") (citing *Uzelac,* 212 N.E.2d at 24).[18] Against this backdrop, Cohen "has presented no reasons, compelling or otherwise, that demonstrate the need for retroactive application in this instance." *Sack,* 613 N.E.2d at 870.

Cohen also argues that it is obvious that the legislature intended Ind.Code § 34–51–3–

4 to be retroactive, because it applies to "*all* cases in which a party requests the recovery of punitive damages," *id.* (emphasis added), while Ind.Code § 34–51–2–1 (1998), (which deals with comparative fault and was also enacted as part of Ind.P.L. 1–1998), is expressly limited to actions accruing after January 1, 1985. *See* Ind.Code § 34–51–2–1(b)(2) (1998). According to Cohen, the fact that Ind.Code § 34–51–3–4 contains no date restriction implicitly indicates that the legislature intended the punitive damages "cap" to apply retroactively. However, this exact "comparison" argument was squarely rejected by the Indiana Court of Appeals in *Chesnut,* which held that retroactivity cannot be implied from the legislature's silence within a particular statutory section, even when another section of the same statute contains an express effective date limitation. *Chesnut,* 665 N.E.2d at 9. Thus, *Chesnut* reaffirmed the general rule that retroactivity must be explicitly provided for by the legislature. *Chesnut,* 665 N.E.2d at 9 ("[Cohen's] argument 'flies in the face of the general rule that in the absence of language to the contrary, legislative enactments, including amendments to existing laws, are construed as being prospective in operation.'") (quoting *Smith v. Ford Motor Co.,* No. 1:93CV0143 (N.D.Ind. Nov. 2, 1995), mem op. at 3 (Lee,

---

229 (1994) (finding that the Civil Rights Act of 1991 could not be given retroactive effect because its punitive damages provision established a "new right to monetary damages"). According to Cohen, Ind.Code § 34–51–3–4 does not create a new right, but merely places constraints on a right already enjoyed by Indiana plaintiffs, and therefore does not fall within the rationale of Landgraf. Moreover, Cohen points out that there is no "right" to punitive damages in Indiana, *Travelers Indem. Co.,* 442 N.E.2d at 362, and that consequently any limitations placed upon the recovery of punitive damages cannot be considered substantive.

The Court does not share Cohen's conviction that the statute does not affect substantive rights. *See Eddy v. McGinnis,* 523 N.E.2d 737, 741 (Ind. 1988) ("Absent a constitutional prohibition, the legislature is free to reform the state's *substantive law* in [the field of punitive damages]"); (emphasis added); *see also Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 63, 115 S.Ct. 1212, 1219, 131 L.Ed.2d 76 (1995) (describing the right to punitive damages as "an important substantive right"). *Cf. Western Smelting & Met-*

---

*als, Inc. v. Slater Steel,* 621 F.Supp. 578, 585 (N.D.Ind.1985) ("a statute which *increases* a defendant's liability cannot be applied retroactively.") (citing *Herrick v. Sayler,* 245 F.2d 171, 174 (7th Cir.1957)) (emphasis added). Nevertheless, as discussed *infra,* even if we assume, *arguendo,* that Ind.Code § 34–51–3–4 is procedural in nature, Cohen still does not prevail.

**18.** *Accord Metro Holding Co. v. Mitchell,* 589 N.E.2d 217, 219 (Ind.1992) ("[This] is also not a case in which there is a pressing social need ... to apply the statute in any manner other than prospectively."); *Chesnut,* 665 N.E.2d at 9 ("Strong and compelling reasons must exist for retroactive application."); *Sack v. Estate of Hubbell,* 613 N.E.2d 868, 870 (Ind.App.1993) ("Retroactive application is the exception even for remedial laws and such statutes will not be applied retroactively without strong and compelling reasons."); *Turner v. Town of Speedway,* 528 N.E.2d 858, 863 (Ind.App.1988) ("Even if a statute is remedial in nature, retroactive application will be denied unless there are compelling reasons to do so.")

J.)) (internal citation omitted).[19] Therefore, we shall not retroactively apply Ind.Code § 34–51–3–4 to this case.

#### 5. *Remittitur*

 In the alternative, Cohen seeks a remittitur of the jury's total punitive damage award of $800,000 on that ground that it is grossly excessive and inconsistent with applicable law. The jury's damage calculations are entitled to great deference, and the Court may only vacate the jury's verdict if the award is either "monstrously excessive," "shocks the judicial conscience," has "no rational connection to the evidence," or clearly appears "to be the result of passion and prejudice." *E.g., McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 516 (7th Cir. 1993); *Levka v. City of Chicago*, 748 F.2d 421, 424–425 (7th Cir.1984); *Arlington State Bank v. Colvin*, 545 N.E.2d 572, 580 (Ind. App.1989). "An award of punitive damages should be set aside only if it exceeds an amount necessary to achieve the objective of punishment and deterrence." *Allahar v. Zahora*, 59 F.3d 693, 696 (7th Cir.1995) (citing *Hamilton v. Svatik*, 779 F.2d 383, 389 (7th Cir.1985)). "However, 'a punitive damage award may not constitute merely a windfall to the prevailing party.'" *Id.* (quoting *Ramsey v. American Air Filter Co.*, 772 F.2d 1303, 1314 (7th Cir.1985)). The decision to set aside a punitive damages award and grant a remittitur is committed to the sound discretion of the district court. *Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 106 F.3d 1388, 1397 (7th Cir.1997) (citing *Gasperini v. Center for Humanities*, 518 U.S. 415, 434–35, 116 S.Ct. 2211, 2223, 135 L.Ed.2d 659 (1996)).

Cohen, apparently mindful of the difficulties inherent in determining the point at which a damage award ceases to become "reasonable" and enters the realm of the "monstrously excessive," suggests that the Court apply the guideposts articulated by the Supreme Court in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), in reviewing the punitive damages award. Although the Supreme Court expressly used *BMW* as a vehicle to illustrate the standard for identifying damage awards that are "constitutionally" excessive, *id.* at 568, 116 S.Ct. at 1595 (citation omitted), several courts, including the Seventh Circuit, appear to have relied upon *BMW* to analyze damage awards that do not necessarily implicate due process. *See Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 441 (1997) (observing that the district court committed no error in carefully reviewing a damage award pursuant to the *BMW* guideposts); *Deffenbaugh–Williams v. Wal–Mart Stores, Inc.*, 156 F.3d 581, 597 (5th Cir.1998) ("Again, although *BMW* concerns constitutional limits, it is instructive for reviewing other excessiveness claims for punitive damages."); *Mathie v. Fries*, 121 F.3d 808, 816 (2d Cir.1997) ("We have recently looked to these guideposts to assist us in the application of our standard, by which we deem excessive a punitive damage award that 'shocks our judicial conscience'") (quoting *Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir.1996)). Thus, without passing on the question of whether the punitive award violates Cohen's due process rights, we shall accept the suggestion that we look to the three factors discussed in *BMW* to guide our review of the punitive damage awards.

#### DEGREE OF REPREHENSIBILITY

 The first and most important indicium of the reasonableness of a damages award is the reprehensibility of the defendant's conduct. *BMW*, 517 U.S. at 575, 116 S.Ct. at 1599. The Supreme Court suggested that a "hierarchy" of reprehensibility exists, "with acts of violence or threats of bodily harm being the most reprehensible, followed by acts taken in reckless disregard for others' health or safety, affirmative acts of trickery and deceit, and finally, acts of omission and mere negligence." *Florez v. Delbovo*, 939 F.Supp. 1341, 1347–48 (N.D.Ill. 1996) (citing *BMW*, 517 U.S. at 575–580, 116 S.Ct. at 1599–1602). The Supreme Court also stated that "evidence that a de-

---

19. Moreover, it would be inappropriate to infer that the legislature implicitly intended for Ind. Code § 34–51–3–4 to apply retroactively if any other statutory amendment enacted as part of the rather far reaching Ind.P.L. 1–1998 affects substantive rights. *See Chesnut*, 665 N.E.2d at 10.

fendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *BMW,* 517 U.S. at 576–77, 116 S.Ct. at 1599 (citation omitted). Placed on this scale, Cohen's conduct, which occurred behind closed doors in the workplace, clearly rises above acts of mere trickery or deceit, and contained overtones of violence and a threat of bodily harm. *Cf. Baskerville v. Culligan International Co.,* 50 F.3d 428, 431 (7th Cir.1995) ("Remarks innocuous or merely mildly offensive when delivered in a public setting might acquire a sinister cast when delivered in the suggestive isolation of a hotel room."). Moreover, the evidence at trial indicated that Cohen had previously engaged in similar unlawful conduct, although this previous conduct certainly did not rise to the same level of reprehensibility as his encounter with the Plaintiff.

On the other hand, it must be recognized that this was in reality not a particularly vicious or prolonged attack (the incident by the Plaintiff's own account lasted approximately 30 seconds), as evidenced by the fact that the Plaintiff did not suffer any physical injuries from the encounter. "That conduct is sufficiently reprehensible to give rise to tort liability, and even a modest award of exemplary damages, does not establish the high degree of culpability that warrants a substantial punitive damages award." *BMW,* 517 U.S. at 580, 116 S.Ct. at 1601. Rather, punitive damages "should reflect the enormity of [a defendant's] offense." *Id.* at 575, 116 S.Ct. at 1599 (internal quotation marks and citation omitted). In other words, while the incident might properly be characterized as a sexual assault, it was not nearly so reprehensible as to support a total punitive award of $400,000, much less $800,000. This conclusion is supported by the Second Circuit's decision in *Mathie,* which canvassed both reported and unreported punitive damage awards in cases involving sexual assaults by private individuals. These awards included:

—$500,000 to each of two plaintiffs, aged seven and ten, who were repeatedly raped, sodomized, and otherwise sexually abused;

—$200,000 awarded to a plaintiff who was raped at knife point by an acquaintance who slashed her face and clothes; and

—$100,000, reduced from $275,000, awarded to a plaintiff who was sexually touched as a child by her stepfather. *Mathie,* 121 F.3d at 817. Indeed, the plaintiff in *Mathie,* an acknowledged homosexual, suffered a far more despicable and invasive sexual assault while incarcerated in jail than did the Plaintiff in the case at bar. In *Mathie,* the defendant jail official solicited sexual favors from Mathie and ultimately forcibly sodomized him. Mathie sued the jail official under § 1983, and after a bench trial the district court awarded $250,000 in compensatory damages and $500,000 in punitive damages. The Second Circuit, after recounting the above cases as guideposts, reduced the punitive award against the jail official in his individual capacity to $200,000. Neither the district court not the Second Circuit considered the jail official's limited financial resources in setting the punitive damages amount, because both understood that the jail official was covered by an indemnification agreement. *Mathie,* 121 F.3d at 815–16.

The conduct punished in these cases was far more violent and reprehensible than Cohen's, yet the jury here awarded punitive damages several times greater than these amounts. This observation is not meant to belittle the Plaintiff's claim or her injuries, for "unchecked sexual harassment" such as the Plaintiff described here can clearly inflict substantial harm. Nevertheless, we must conclude that the punitive award here grossly exceeds the relative enormity or reprehensibility of Cohen's conduct. *BMW,* 517 U.S. at 575, 116 S.Ct. at 1599.

### RATIO

Cohen is quick to point out that the punitive damages awarded are approximately 155 times greater than the compensatory award, a ratio that he contends would cause a windfall of damages for the Plaintiff. In response, the Plaintiff recites *BMW*'s admonition against applying a simple mathematical formula to the excessiveness inquiry, as well as

the majority's recognition that in some circumstances a low award of compensatory damages may properly support a high punitive award. *BMW*, 517 U.S. at 582–83, 116 S.Ct. at 1602–03 (a high ratio may sometimes be justified "in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine."). The rather fact-specific nature of the ratio guidepost appears to limit this factor's importance in reviewing the excessiveness of a damage award. *Compare BMW*, 517 U.S. at 583, 116 S.Ct. at 1602 (punitive award of $2,000,000 on top of compensatory award of $4,000 created a "breathtaking" and excessive 500 to 1 ratio), *with Shea v. Galaxie Lumber & Constr. Co., Ltd.*, 152 F.3d 729, 736 (7th Cir.1998) (punitive award of $2,500 on top of a compensatory award of $1.00 created a 2,500 to 1 ratio that was not "grossly out of line"). Thus, while a 155 to 1 ratio is by no means a dispositive benchmark, the Plaintiff has not argued, and the verdict does not indicate, that the jury had any difficulty in assessing or compensating the Plaintiff's subjective injuries. Consequently this case is not one which *BMW* indicated might justify the relatively high ratio between the punitive and compensatory awards.

SANCTIONS FOR COMPARABLE MISCONDUCT

The third indicium of excessiveness articulated in *BMW* is a comparison between the award and "the civil or criminal penalties that could be imposed for comparable misconduct," because "a reviewing court should accord 'substantial deference' to legislative judgments concerning the appropriate sanctions for the conduct at issue." *BMW*, 517 U.S. at 583, 116 S.Ct. at 1603. As to the state law claim, Indiana law holds that "[a] person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor." Ind.Code § 35–42–2–1(a) (1994 & Supp.1998). The penalty for a Class B misdemeanor, which has not changed since 1994, is imprisonment for not more than 180 days, and a fine of not more than $1,000.

Ind.Code § 35–50–3–3 (1994). Obviously, the punitive damages award of $400,000 on the Plaintiff's ·state law claim is substantially greater than the maximum criminal fine that could have been imposed upon Cohen.[20]

A canvassing of the case law and relevant treatises has uncovered few reported decisions challenging punitive damage awards in sex discrimination or sexual harassment cases under § 1983. In *Gutzwiller v. Fenik*, 860 F.2d 1317 (6th Cir.1988), the Sixth Circuit upheld punitive awards of $38,000 and $50,000 against a university department chair and the tenure committee chair for their roles in influencing a decision to deny tenure to the plaintiff, a female professor. In *Beardsley v. Webb*, 30 F.3d 524 (4th Cir. 1994), the jury awarded $76,000 in compensatory damages and $8,000 in punitive damages to a female employee of a county sheriff's office who had been subjected to inappropriate touchings, remarks, and related adverse treatment, and both were affirmed on appeal. The female plaintiff in *Coleman v. Kaye*, 87 F.3d 1491 (3d Cir.1996), was employed in a county prosecutor's office, and was awarded $50,000 in total punitive damages for intentional sex discrimination resulting from two incidents in which she was not promoted by the county prosecutor. Admittedly, none of these cases involved a single, relatively egregious physical act, but they do appear to set a ballpark range far below the punitive damages awarded here.

Some scale has also been supplied by the Seventh Circuit in some recent Title VII sexual harassment decisions. In *Timm v. Progressive Steel Treating, Inc.*, 137 F.3d 1008, 1009–10 (7th Cir.1998), frequent touchings and unwelcome remarks yielded the plaintiff no compensatory damages and $15,000 in punitive damages, both of which were upheld on appeal. In *Shea*, 152 F.3d at 736, frequent touchings, the grabbing of the plaintiff's breasts, and sexual solicitations resulted in a $1.00 compensatory award, and a $2,500 punitive award. In light of *Timm*, the Seventh Circuit declared that the district court

---

**20.** Although the Court will not give retroactive effect to Ind.Code § 34–51–3–4 (1998), we do acknowledge that the statute indicates the legislature's clear intent to limit punitive damage awards in state tort actions. *BMW*, 517 U.S. at 583, 116 S.Ct. at 1603 ("substantial deference" is owed to legislative judgements regarding appropriate sanctions).

did not abuse its discretion in failing to grant a remittitur. *Id.* As discussed *supra*, the degree of reprehensibility of Cohen's conduct is much closer to the level of conduct in *Timm* and *Shea* than that of *Mathie* and other cases which have supported six-figure punitive awards. Correspondingly, we must conclude that the punitive award here is far out of line with sanctions both available and imposed for comparable misconduct, and should be reduced to an amount closer to what was awarded in *Timm,* rather than what was awarded in *Mathie.*[21]

### COHEN IS PERSONALLY LIABLE FOR THE JUDGMENT

The enormity of the total punitive award in this case also warrants consideration of a factor that was not before the Supreme Court in *BMW:* Cohen is an individual with a salary of approximately $90,000 a year, according to his trial testimony, and not a multi-national corporation. That is to say, "although [Cohen] did have some notice as to the gravity of his conduct, nothing could conceivably have prepared him for a punitive damage award amounting to the sacrifice of the better part of a [professor's pre-tax] pay for a decade." *Lee,* 101 F.3d at 811; *see also id.* at 813 ("We recognize that one purpose of punitive damages is deterrence, and that deterrence is directly related to what people can afford to pay.") (citation omitted); *Vasbinder v. Scott,* 976 F.2d 118, 121 (2d Cir. 1992) ("[a punitive] award should not be so high as to result in the financial ruin of the defendant."); *Atencio v. City of Albuquerque,* 911 F.Supp. 1433, 1447 (D.N.M.1995) ("A review of the case law indicates the importance of the relationship between the amount of punitive damages and the ability of the defendant to pay the award.") (collecting cases). *Cf. Ettinger v. State Univ. of New York State College of Optometry,* No. 95 Civ. 9893(RWS), 1998 WL 91089, at *12 (S.D.N.Y. March 2, 1998) (reviewing cases and opining that awards of $50,000 per individual defendant "greatly exceeds the amount considered necessary for deterrence.").[22]

Indeed, the Seventh Circuit recognized in *Kemezy,* 79 F.3d at 35, that while the punishment and deterrence purposes of punitive damages are not dependant on receiving proof of a defendant's income, damage awards which greatly exceed the defendant's ability to pay result in a waste of time both for the jury, and later, the bankruptcy courts. *Id.* at 36. *See also Bell v. City of Milwaukee,* 746 F.2d 1205, 1267 (7th Cir. 1984) (concluding that reduction in assessment of punitive damages against individual defendant from $350,000 to $50,000 considered defendant's relative wealth, yet still fulfilled aims of punishment and deterrence); *DeRance, Inc. v. PaineWebber, Inc.,* 872 F.2d 1312, 1328 (7th Cir.1989) ("Under the law which governs the amount of punitive damages, we have indicated that we must reject the amount of a jury's award if it exceeds what was required to serve the objectives of deterrence and punishment.") (quoting *McKinley v. Trattles,* 732 F.2d 1320, 1327 (7th Cir.1984)). Given the fact that Cohen is personally responsible for satisfying the judgment, the jury's punitive damage award in this case is far in excess of what is reasonably necessary to punish and deter.[23]

**21.** We recognize that Title VII cases do not present a perfect analogy to the instant case, because Title VII damage awards are recovered from employers, while § 1983 awards may, as in this case, be recovered from an individual defendant who is not indemnified by his employer. As discussed more fully *infra,* this distinction weighs in favor of Cohen.

**22.** The Court is aware that in *Keenan v. Philadelphia,* 983 F.2d 459 (3d Cir.1992), the Third Circuit affirmed punitive awards against three individuals found liable for gender harassment in the remitted amounts of $266,666.65, $266,666.65, and $133,333.35, respectively. However, in that case it was clear to the reviewing courts that the individual defendants were indemnified by the city, and therefore would not have to pay these sums out of their own pockets. In stark contradistinction, it is apparent from the evidence at trial, as well as the Court's participation in the many hours of pretrial conferences in this case, that IU will not be indemnifying Cohen in this action. Thus, the Plaintiff's punitive damage award, as well as her compensatory damage award and an award of attorneys fees, will all have to be satisfied out of Cohen's pocket alone.

**23.** We also observe that Congress has imposed a maximum combined punitive and compensatory limit in sexual harassment cases under Title VII of $300,000 for those employers with more than 500 employees, and a combined punitive and compensatory limit of $50,000 for those employ-

This entire discussion leads to the inescapable conclusion that the jury's punitive damage award is impermissibly excessive and must be reduced by the Court. However, we will not undertake this task in a vacuum, because the jury "plainly intended to award a significant amount in punitive damages and this intention must be given due regard." *Florez,* 939 F.Supp. at 1349. After carefully considering all the evidence at trial (including Cohen's ability to satisfy a judgment), the purposes of punitive damages as outlined in *Kemezy,* our discussion of the *BMW* guideposts, the jury's plain intentions, and recent Seventh Circuit awards in comparable cases, the Court will grant Cohen's motion for a remittitur and reduce the Plaintiff's punitive award on the state law claim from $400,000 to $25,000, and on the § 1983 claim from $400,000 to $25,000, thereby effectively reducing the aggregate punitive award from $800,000 to $50,000. The Court firmly believes that this aggregate amount represents the high end for a reasonable punitive damage award against an individual in circumstances such as these, thereby seemingly comporting with the jury's obvious intentions.

This conclusion finds support in the Seventh Circuit's long standing approach of analyzing challenged damage awards to determine whether they are out of line with analogous cases. *E.g., Cooper,* 97 F.3d at 920; *Frazier v. Norfolk & Western Ry. Co.,* 996 F.2d 922, 925 (7th Cir.1993); *DeRance,* 872 F.2d at 1329; *Levka,* 748 F.2d at 425. Cohen's conduct was without question egregious and illegal, but it simply was not as violent or intrusive as the cases which have supported six-figure punitive awards, *e.g., Mathie,* much less an award approaching one million dollars. Indeed, this Court is unaware, after reviewing the Plaintiff's brief and the relevant case law, of any § 1983 gender discrimination case in which a plaintiff recovered more than $50,000 in punitive damages against an unindemnified individual defendant.

Of course, the Court may not arbitrarily reduce the Plaintiff's punitive damage award, because doing so would infringe upon her Seventh Amendment right to a jury trial.

*Hetzel v. Prince William County, Virginia,* 523 U.S. 208, 118 S.Ct. 1210, 140 L.Ed.2d 336 (1998) (per curiam). Rather, the proper procedure is to give the Plaintiff the choice of either accepting the remittitur, or of rejecting the remittitur and forcing a new trial limited solely on the issue of punitive damages. *McKinnon,* 750 F.2d at 1392. The Plaintiff shall inform the Court of her decision to accept or reject the proposed remittitur within twenty (20) days from the date of this Order.

## V. CONCLUSION

For all the foregoing reasons, the Plaintiff's motion to alter or amend the judgment is DENIED. Defendant Cohen's motion for a new trial is GRANTED as to his request for a remittitur of the punitive damage award, but is DENIED in all other respects. Within twenty (20) days of this Order the Plaintiff will either accept or reject the remittitur of $375,000 on the state law punitive award and $375,000 on the § 1983 punitive award. If accepted, a punitive damage award of $25,000 will entered on both the state law and the § 1983 claims. If rejected, the jury's punitive damages award will be vacated and a new trial will be granted solely as to the amount of punitive damages to be awarded.

SO ORDERED.

ers with between 14 and 101 employees. 42 U.S.C. § 1981a(b)(3)(A), (D).